KLUCK, Plaintiff in error, v. STATE, Defendant in error.*

*December 1—December 22, 1967.*

* Motion for rehearing denied, without costs, on February 27, 1968.

380

For the plaintiff in error there were briefs and oral argument by *Dane F. Morey* of Durand.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

HANLEY, J. Defendant Kluck raises two issues on this review: (1) Was the evidence secured at the apartment obtained as the result of an illegal search and seizure in violation of plaintiff in error's (defendant's) constitutional rights and therefore inadmissible; (2) was there sufficient credible evidence to sustain defendant's conviction?

## Legality of Search and Seizure.

The trial court held that defendant did not have standing to raise the issue of search and seizure with respect to Cosgrove's apartment and that the search and seizure were proper. Defendant contends that he has standing and that the search and seizure were illegal.

The apartment at which the narcotics were found by the authorities was rented by Cosgrove. Kluck, a friend of Cosgrove's at the time of these happenings, had a key to the apartment and to the basement locker that went with the apartment, both of which were given to him by Cosgrove. He thus had access to the apartment and could come and go as he liked. Occasionally he entertained friends there. He stayed there three or four nights a week and generally ate one meal a day there when he stayed at the apartment, but never bought food for the apartment. He kept some of his belongings there. At one point, in March of 1965, he moved into his own apartment, but that arrangement lasted only a month. Cosgrove testified that Kluck had no permanent home and that he did not consider that Kluck's home was his apartment. Kluck paid no rent but did give Cosgrove money from time to time which Cosgrove testified was as repayment for arrest bonds Cosgrove had arranged for him or was to pay for getting clothes cleaned at the laundromat. Kluck was also in jail much of the time preceding the events here and also stayed at his girl friend's apartment when he was not at Cosgrove's.

Whether the search and seizure are valid is a question of federal constitutional law. If evidence obtained by an illegal search is admitted into evidence and has a prejudicial effect on the defendant's case, then the fourteenth amendment due process clause requires that a subsequent conviction be reversed. *Mapp v. Ohio* (1961), 367 U. S. 643, 81 Sup. Ct. 1684, 6 L. Ed. 2d 1081; *Browne v. State*

(1964), 24 Wis. 2d 491, 129 N. W. 2d 175, 131 N. W. 2d 169, certiorari denied, 379 U. S. 1004, 85 Sup. Ct. 730, 13 L. Ed. 2d 706.

In *Jones v. United States* (1960), 362 U. S. 257, 80 Sup. Ct. 725, 4 L. Ed. 2d 697, the United States Supreme Court stated that in order to qualify as a person aggrieved by an unlawful search and seizure, one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. The purpose of exclusion of evidence in violation of the strictures placed upon searches and seizures has for its purpose the protection of privacy. The *Jones Case* proceeded to hold that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him.

In *United States v. Jeffers* (1951), 342 U. S. 48, 72 Sup. Ct. 93, 96 L. Ed. 59, one Roberts sought out the house detective of a hotel in Washington, D. C., and offered him $500 to let him into a room in the hotel occupied by respondent's two aunts, the Misses Jeffries. The house detective told Roberts to call back later in the evening and immediately reported the incident to a Lieutenant Karper, in charge of the narcotics squad of the metropolitan police, who came to the hotel and went with the house detective to the room occupied by the Misses Jeffries. When there was no answer to their knock on the door, the two officers then went to the assistant manager to obtain a key to the room. Although neither officer had a search or arrest warrant, they entered the room. On the top shelf of a closet they discovered a pasteboard box containing 19 bottles of cocaine, of which only two had United States stamps attached, and one bottle of codeine, also without stamps. Respondent was arrested the following day for a violation

of certain of the federal narcotics laws, 26 U. S. C. sec. 2553 (a) and 21 U. S. C. sec. 174. It appeared from the evidence at the pretrial hearing that his aunts had given respondent a key to their room, that he had permission to use the room at will, and that he often entered the room for various purposes. The hotel records reflected that the room was assigned to and paid for by them alone. The United States Supreme Court held that respondent had standing to object to the search and seizure. We think this case compels a finding by this court that the defendant has standing to raise the issue of the validity of the search and seizure of Cosgrove's apartment.

The cases cited by the state, *United States v. Beigel* (2d Cir. 1967), 370 Fed. 2d 751; *United States v. Liguori* (2d Cir. 1967), 373 Fed. 2d 304; and *Robinson v. State* (Fla. 1967), 194 So. 2d 29, are inapplicable, for nowhere does it appear in the facts of those cases that the party challenging the legality of the search had any connection at all with the premises searched.

In *Ruiz v. State* (Fla. 1967), 199 So. 2d 478, 479 also cited by the state, the court stated:

". . . The evidence was to the effect that he had a key to Rodriguez' apartment, had spent a night there on occasion and that some articles belonging to him (glasses, water container, towels) were in Rodriguez' apartment. That showing did not meet the requirement that to enjoy standing to challenge the search of the Rodriguez apartment, it was incumbent upon Ruiz to show he was the owner, lessee, or lawful occupant of the premises searched, as held in Mixon v. State, Fla. 1951, 54 So. 2d 190, 192; State v. Smith, Fla. App. 1960, 118 So. 2d 792; McCain v. State, Fla. App 1963, 151 So. 2d 841; Robinson v. State, Fla. App. 1967, 194 So. 2d 29. Cf. State v. Leveson, Fla. 1963, 151 So. 2d 283."

We would hesitate to follow the Florida holding in light of the following language in the *Jones Case,* at pages 265 and 266:

"While this Court has never passed upon the interest in the searched premises necessary to maintain a motion to suppress, the Government's argument closely follows the prevailing view in the lower courts. They have denied standing to 'guests' and 'invitees' (*e.g., Gaskins v. United States,* 95 U. S. App. D. C. 34, 35, 218 F. 2d 47, 48; *Gibson v. United States,* 80 U. S. App. D. C. 81, 84, 149 F. 2d 381, 384; *In re Nassetta,* 125 F. 2d 924; *Jones v. United States,* 104 U. S. App. D. C. 345, 262 F. 2d 234), and employees, who though in 'control' or 'occupancy' lacked 'possession' (*e.g., Connolly v. Medalie,* 58 F. 2d 629, 630; *United States v. Conoscente,* 63 F. 2d 811). The necessary quantum of interest has been distinguished as being, variously, 'ownership in or right to possession of the premises' (*e.g., Jeffers v. United States,* 88 U. S. App. D. C. 58, 61, 187 F. 2d 498, 501, affirmed, *Jeffers v. United States,* 342 U. S. 48), the interest of a 'lessee or licensee' (*United States v. De Bousi,* 32 F. 2d 902), or of one with 'dominion' (*McMillan v. United States,* 26 F. 2d 58, 60; *Steeber v. United States,* 198 F. 2d 615, 617). We do not lightly depart from this course of decisions by the lower courts. We are persuaded, however, that it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical. Even in the area from which they derive, due consideration has led to the discarding of these distinctions in the homeland of the common law. See Occupiers' Liability Act, 1957, 5 and 6 Eliz. 2, c. 31, carrying out Law Reform Committee, Third Report, Cmd. 9305. Distinctions such as those between 'lessee,' 'licensee,' 'invitee' and 'guest,' often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards."

We now consider the legality of the "search" of Cosgrove's apartment.

Defendant contends that the search and seizure were in no way incidental to a lawful arrest, for the officers did not have a warrant for either Cosgrove's or his

arrest nor was anyone under arrest at the time the officers pushed their informant through the door and gained entry forcibly.

It is true that the mere fact that probable cause for belief that certain articles subject to seizure are in a dwelling cannot of itself justify a search without a search warrant. *Jones v. United States* (1958), 357 U. S. 493, 78 Sup. Ct. 1253, 2 L. Ed. 2d 1514; *Agnello v. United States* (1925), 269 U. S. 20, 46 Sup. Ct. 4, 70 L. Ed. 145. But a search and seizure of limited extent can be made incident to a valid arrest. *Henry v. United States* (1959), 361 U. S. 98, 80 Sup. Ct. 168, 4 L. Ed. 2d 134; *Johnson v. United States* (1948), 333 U. S. 10, 68 Sup. Ct. 367, 92 L. Ed. 436; *Ker v. California* (1963), 374 U. S. 23, 83 Sup. Ct. 1623, 10 L. Ed. 2d 726.

Probable cause exists if the facts and circumstances known to the police officer warrant a prudent man in believing an offense has been committed. *Henry v. United States, supra.* Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime. *State v. Camara* (1965), 28 Wis. 2d 365, 137 N. W. 2d 1; *Browne v. State, supra.*

Whether the arrest was valid or not must be determined by Minnesota law, since the arrest occurred there. *United States v. Di Re* (1948), 332 U. S. 581, 589, 68 Sup. Ct. 222, 92 L. Ed. 210; *State v. Klein* (1964), 25 Wis. 2d 394, 130 N. W. 2d 816, certiorari denied, 380 U. S. 951, 85 Sup. Ct. 1083, 13 L. Ed. 2d 969.

In Minnesota, an arrest may be made without a warrant upon probable cause as known to the arresting officer. Sec. 629.34 (3), Minn. Stats. *State v. Harris* (1963), 265 Minn. 260, 121 N. W. 2d 327, certiorari denied, 375 U. S. 867, 84 Sup. Ct. 141, 11 L. Ed. 2d 94, indicates probable cause and reasonable cause are synonymous. In *State v. Emerson* (1963), 266 Minn. 217, 123 N. W. 2d 382, the court held that if an arrest was made

on the basis of the advice of a trustworthy informant, it was sufficient to constitute probable cause, citing *Draper v. United States* (1959), 358 U. S. 307, 79 Sup. Ct. 329, 3 L. Ed. 2d 327. If an arrest is lawful, an officer may make search within reasonable limits. *State v. Olson* (1965), 271 Minn. 50, 135 N. W. 2d 181.

Here the information was given by a reliable informer who had collaborated with the police before. He led the police officers to the apartment and told them that narcotics were in the apartment after viewing the narcotics personally. This gave the officers probable cause to arrest Cosgrove on the spot for possession of narcotics. Secs. 618.02 and 618.21, Minn. Stats. They had no need to be able to see the narcotics from their position outside the door. The narcotics were not hidden from view once they were inside the door and were certainly a proper subject for seizure in a search incident to arrest.

Defendant also contends the proper way to search a dwelling place is to obtain a search warrant. In *Ker v. California, supra,* the United States Supreme Court held that the practicability of obtaining a warrant is not a controlling factor where the search is made incidental to the arrest.

## Sufficiency of Evidence to Convict.

Defendant contends that since the stolen goods were not in his sole possession on the morning after the burglary, there is no credible evidence to support the verdict of guilty, there being no other evidence against him. This argument presupposes that the state was relying on a presumption of fact which called for an explanation of how the possessor obtained the property as was relied on in *State v. Johnson* (1960), 11 Wis. 2d 130, 104 N. W. 2d 379. There the court stated at page 139:

"Mere possession of stolen property raises no inference of guilt, but Wisconsin from early times has

followed the rule that unexplained possession of recently stolen goods raises an inference of greater or less weight, depending upon the circumstances, that the possessor is guilty of the theft and also of burglary if they were stolen in a burglary. Such inference being in the nature of a presumption of fact calls for an explanation of how the possessor obtained the property. Such presumption is not conclusive and may be rebutted. . . ."

However, albeit that defendant's possession was not exclusive, also in the case was the conversation overheard by Cosgrove to the effect that they had made a burglary and only had to go a few miles. This and the unassailable linkage of the stolen goods to Hougen's pharmacy is strong circumstantial evidence that Kluck committed the burglary, strong enough to prove the defendant's guilt beyond a reasonable doubt when believed and rationally considered by a jury. *State v. Clarke* (1967), 36 Wis. 2d 263, 153 N. W. 2d 61; *Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183.

Circumstantial evidence may be and often is stronger and more satisfactory than direct evidence. *State v. Johnson, supra; Kopacka v. State* (1964), 22 Wis. 2d 457, 126 N. W. 2d 78.

### *Conclusion.*

We conclude that the arresting officer had probable cause to arrest Cosgrove and that the search and seizure was made incidental to the lawful arrest. Therefore the evidence obtained was admissible in the trial of the defendant for burglary.

We find there was credible evidence to support the jury's verdict that the defendant was guilty of burglary. We find no prejudicial error to the defendant; and we further find the trial court properly denied defendant's motion to set aside the verdict and for judgment of acquittal and in the alternative for a new trial.

*By the Court.*—Judgment and order affirmed.