LAASCH, Plaintiff in error, v. STATE, Defendant in error.

*No. 76-374-CR. Argued May 2, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 278.)

For the plaintiff in error the cause was argued by *Robert J. Paul,* assistant state public defender, with whom on the briefs were *Howard B. Eisenberg,* state public defender, and *James R. Glover* and *Shellow & Shellow,* of counsel, of Milwaukee.

For the defendant in error the cause was argued by *James H. Petersen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

CONNOR T. HANSEN, J. On this review, Karyn D. Laasch (hereinafter defendant), raises several issues. However, the resolution of the issue of whether the defendant was unlawfully arrested, causing the trial court to lack personal jurisdiction, is dispositive of this review.

On the afternoon of February 5, 1975, Village of Brown Deer police detective John Bendtschneider observed the defendant as she sold to a police informer, for $50, approximately one gram of what she purported to be cocaine. Chemical tests later confirmed that the substance was a form of cocaine. At approximately 9 p.m. that evening, the defendant was arrested in her apartment, without a warrant, on the basis of the sale which had been observed earlier that day.

The police believed the defendant to be intoxicated at the time of her arrest; she was held overnight and the next day gave incriminating statements to the police. Bail was set by a telephonic communication with a circuit judge. We do not know the amount of the bail, the the defendant never posted bail. She remained in custody

that evening. The next morning, February 7, 1975, she was released at the direction of an assistant district attorney, on an understanding that she would cooperate with the police in attempting to secure the arrest of others involved in drug sales. These efforts apparently proved unsuccessful.

Thirteen days after she was first taken into custody, shortly before midnight on February 18, 1975, the defendant was rearrested, without a warrant, inside her apartment. She testified, and the state did not dispute, that she returned from a neighboring apartment to find police officers waiting inside her apartment, and that they had been admitted by her five-year old son.

The defendant was subsequently charged with delivery of cocaine, contrary to secs. 161.16(4) and 161.41(1)(b), Stats. By timely motions the defendant moved to dismiss the prosecution, challenging the legality of her arrest and the voluntariness of the statements she had given the police. These motions were argued to the trial court prior to the preliminary examination and were denied. The defendant was bound over for trial.

At an evidentiary hearing before CHRIST T. SERAPHIM, Circuit Judge, the defendant again argued that the arrest was illegal and that the trial court lacked personal jurisdiction over her. The trial court found that the arrest was proper and that the defendant's statements had been voluntarily made. Commencing with her initial appearance in court and continuing throughout the entire proceeding in the trial court, the defendant has maintained that her arrest was unlawful and that the trial court therefore lacked personal jurisdiction.

The arrest is challenged on three grounds. First is the thirteen-day delay between the time the police acquired probable cause to believe the defendant had committed the crime and the time of her arrest. Second is the fact that the arrest involved a warrantless entry of her home, and third is the fact that the arrest was effected at nighttime.

Under these circumstances, the defendant asserts, arrest without a warrant was unlawful, absent some clear exigency justifying warrantless arrest.

The state asserts that the trial court obtained jurisdiction over the defendant at the time of her initial arrest, which was undisputedly supported by probable cause for arrest, and that this jurisdiction was not lost when the defendant was released, without bail, at the direction of an assistant district attorney. The circumstances of the subsequent re-arrest are therefore irrelevant, the state contends.

This argument is not persuasive. The jurisdiction of a court over the person of an accused depends upon the physical presence of the accused before the judge. *Pillsbury v. State,* 31 Wis.2d 87, 142 N.W.2d 187 (1966); *quoted* in *Lampkins v. State,* 51 Wis.2d 564, 570, 187 N.W.2d 164 (1971). *See also: Walberg v. State,* 73 Wis. 2d 448, 460, 243 N.W.2d 190 (1976). The instant defendant was not brought before a judge during the period of her initial arrest and no warrant was issued or served upon her. Although bail was set for her over the telephone, no bail was posted by the defendant, and she was released by the direction of the assistant district attorney. This does not constitute "physical presence" sufficient to confer personal jurisdiction. The trial court therefore did not obtain personal jurisdiction incident to the initial arrest.

The defendant argues it was unreasonable for the police to fail to procure a warrant for her arrest during the thirteen-day period between the cocaine sale and her second arrest. The defendant recognizes that sec. 968.07 (1) (d), Stats.,[1] authorizes warrantless arrests when the arresting officer has reasonable grounds to believe the

---

[1] Sec. 968.07(1), Stats., provides in part:

". . . (1) A law enforcement officer may arrest a person when:

"(d) There are reasonable grounds to believe that the person is committing or has committed a crime."

person arrested has committed a crime, *Rinehart v. State,* 63 Wis.2d 760, 768, 218 N.W.2d 323. However, she contends that regardless of this statute, her second warrantless arrest constituted an unreasonable seizure of her person prohibited by the fourth amendment to the United States Constitution, and art. I, sec. 11, of the Wisconsin Constitution.

This court has rejected the argument that whenever there is time to do so, a warrant must be obtained before making a felony arrest. In *Rinehart v. State, supra,* at 766, 767, this court adopted the rationale of *United States v. Millen* (E.D. Wis. 1972), 338 Fed. Supp. 747, 750, 751, that:

" '. . . as long as probable cause for an arrest exists, arrest warrants are unnecessary, even where there is time to obtain them. See Beck v. Ohio, 379 U.S. 89, 85 S. Ct. 223, 13 L. Ed.2d 142 (1964). . . .' "

In *United States v. Watson,* 423 U.S. 411 (1976), the Supreme Court approved a warrantless felony arrest made in a public restaurant some six days after the arresting officers had obtained probable cause to believe the accused had possession of stolen mail in violation of 18 U.S.C., sec. 1708. There, the Supreme Court emphasized that the necessary inquiry was not whether the officers had time to obtain a warrant, but only whether there was probable cause for the arrest. The Court held that the power to make such a warrantless arrest in a public place was not dependent upon proof of any exigent circumstances which made it impracticable to obtain a warrant. The court declined

". . . to encumber criminal prosecutions with endless litigation with respect to the existence of exigent circumstances, whether it was practicable to get a warrant, whether the suspect was about to flee, and the like." *United States v. Watson, supra,* 423, 424.

Similarly, the Model Code of Pre-Arraignment Procedure proposed by the American Law Institute in 1975

approves warrantless arrests whenever there is a reasonable cause to believe that the person arrested had committed a felony and ". . . does not require an officer to arrest under a warrant even if a reasonable opportunity to obtain a warrant exists." Model Code of Pre-Arraignment Procedure (1975), sec. 120.1 and *Commentary* thereto, at p. 303.

No argument is advanced that the delay in the second arrest was in any way prejudicial to the defendant, and it does not appear from the record that the defendant was in any way prejudiced by the delay.

 There was sufficient and undisputed evidence of probable cause for the instant arrest, and the thirteen-day interval between the date of the offense and the arrest does not, by itself, invalidate the arrest.

However, we conclude that the arrest was tainted by the warrantless entry of the defendant's home. The state identifies no exigent circumstances necessitating a warrantless entry, and the record is barren of any evidence of exigency. The arrest was not made in "hot pursuit"; there was no threat to the safety of other persons; there was no risk that evidence would be destroyed, since the delivered substance had been seized at the time of the previous arrest; and any suggestion that the police feared the defendant would flee is dispelled by the fact that she had been released for approximately two weeks.

Nor was valid consent given for the entry. The defendant testified that the officers were admitted to her apartment by her five-year old son. Consent to an entry is not to be lightly inferred, but must be shown by clear and convincing evidence. *Kelly v. State,* 75 Wis.2d 303, 316, 249 N.W.2d 800 (1977). The burden is on the state to show a free, intelligent, unequivocal and specific waiver. *Gautreaux v. State,* 52 Wis.2d 489, 190 N.W.2d 542 (1971). Here there has been no showing that the defendant's five-year old son possessed the capacity, the

intelligence, or the authority to give constitutionally effective consent to the midnight entry, and, under the facts of this case, a valid consent to such an entry can not be inferred. *See: People v. Jennings,* 142 Cal. App. 2d 160, 298 Pac.2d 56 (1956) ; *United States v. Linderman,* (E.D.N.Y. 1940), 32 Fed. Supp. 123; *State v. Malcolm* (Del. Super. 1964), 203 Atl.2d 270.

The case at bar therefore presents the fundamental constitutional question of whether, in the absence of any exigent circumstances, a police officer may enter a suspect's home without consent in order to make a warrantless arrest. In most previous cases involving arrests in the defendant's home, the propriety of warrantless entry has not been brought into question, and the validity of the warrantless in-house arrest has simply been assumed.[2]

In those cases where this court has specifically considered the validity of warrantless in-house arrests, the arrests have been upheld on the grounds that valid consent was given for the entry or that exigent circumstances made it impracticable to obtain a warrant. *Johnson v. State,* 75 Wis.2d 344, 351, 352, 249 N.W.2d 593 (1976) ; *West v. State,* 74 Wis.2d 390, 246 N.W.2d 675

[2] "The most common situation in which Fourth Amendment issues have arisen has been that in which the police enter the suspect's premises, arrest him, and then carry out a warrantless search and seizure of evidence . . . Where the police act without an arrest warrant, the suspect may argue that an arrest warrant was necessary, that there was no probable cause to arrest, or that even if the arrest was valid, the search and seizure went beyond permissible limits. Perhaps because each of these lines of attack offers a plethora of litigable issues, the more fundamental question of when the police may arrest a man in his house without a warrant has been little considered in the federal courts. This Court has chosen on a number of occasions to assume the validity of an arrest and decide the case before it on the issue of the scope of permissible warrantless search. *E.g., Chimel v. California, supra.* . . ." *Coolidge v. New Hampshire,* 403 U.S. 443, 475, 476 (1971). *See also, e.g.: Kluck v. State,* 37 Wis.2d 378, 385–390, 155 N.W.2d 26 (1967).

(1976) ; *Rinehart v. State, supra.* However, the present case involves neither exigent circumstances nor valid consent to the entry.

Cases involving searches for articles of personal property make clear that, under the fourth amendment, one's home is entitled to special dignity and sanctity. *State v. McGovern,* 77 Wis.2d 203, 214, 252 N.W.2d 365 (1977) ; *Holt v. State,* 17 Wis.2d 468, 477, 117 N.W.2d 626 (1962), *cert. denied* 374 U.S. 844. It is a fundamental rule that warrantless searches and seizures inside a dwelling place are per se unreasonable, and this rule is subject only to "a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967) ; *State v. Elam,* 68 Wis.2d 614, 229 N.W. 2d 664 (1975) ; *State v. Pires,* 55 Wis.2d 597, 201 N.W.2d 153 (1972). The fact that the police may have probable cause to believe that articles subject to seizure are within a dwelling cannot, standing alone, justify a warrantless entry and search. *Kluck v. State, supra,* at 389; *Coolidge v. New Hampshire, supra,* at 450; *Jones v. United States,* 357 U.S. 493 (1958). Rather, exigencies of the situation must make warrantless entry imperative. *Coolidge v. New Hampshire, supra,* at 455.

With regard to such searches, the Supreme Court has said:

"The right of officers to thrust themselves into a home is . . . a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." *Johnson v. United States,* 333 U.S. 10, 14 (1948).

The state suggests that a different rule should govern warrantless entries of one's dwelling when the entry is made to effect an arrest, rather than to effect a search. While the particular exigent circumstances sufficient to

support an entry to effect a warrantless arrest may differ from those which would justify entry for a warrantless search, we believe that the warrantless entry of a dwelling is governed by the same constitutional principles, whether the entry is made to effect a search or an arrest.

In *Coolidge v. New Hampshire, supra,* at 477, 478, the Supreme Court observed that:

". . . the notion that the warrantless entry of a man's house in order to arrest him on probable cause is *per se* legitimate is in fundamental conflict with the basic principle of Fourth Amendment law that searches and seizures inside a man's house without warrant are *per se* unreasonable in the absence of some one of a number of well defined 'exigent circumstances.' . . ."

The fourth amendment of the United States Constitution and art. I, sec. 11 of the Wisconsin Constitution guarantee "[t]he right of the people to be secure in their *persons,* houses, papers and effects, against unreasonable searches and seizures. . . ." (Emphasis added.) An arrest, the taking hold of one's person, is quintessentially a seizure, and the invasion and disruption of a man's life and privacy which stem from his arrest are ordinarily far greater than the intrusions attending a search of his premises. In the absence of exigent circumstances, therefore, we believe the entry of one's dwelling to effect an arrest is subject to a warrant requirement no less exacting than that applicable where the entry is made to effect a search for one's papers and effects.

This conclusion is in accord with decisions of this court and of the United States Supreme Court which, in upholding warrantless arrests within dwellings, have been predicated upon the presence of exigent circumstances justifying the warrantless entry. *West v. State, supra; Johnson v. State, supra; Rinehart v. State, supra; United States v. Santana,* 427 U.S. 38 (1976) ; *Warden*

*v. Hayden,* 387 U.S. 294 (1967). The fact that these decisions rely upon the exigency attending the arrests reflects adherence to the underlying rule that a warrant is required in the absence of such exigent circumstances. *See: Coolidge v. New Hampshire, supra,* at 479–481.

This rule was followed by the Court of Appeals for the District of Columbia in *Dorman v. United States* (D.C. Cir. 1970), 435 Fed.2d 385. There the court said:

". . . [T]he basic principle, the constitutional safeguard that, with room for exceptions, assures citizens the privacy and security of their homes unless a judicial officer determines that it must be overridden, is applicable not only in case of entry to search for property, but also in case of entry in order to arrest a suspect . . . Subject to exceptions for circumstances, that constitutional principle prohibits invasion of the privacy of the home by unconsented entry unless need therefor has been determined by a warrant.

". . . .

"Terms like 'exigent circumstances' or 'urgent need' are useful in underscoring the heavy burden on the police to show that there was a need that could not brook the delay incident to obtaining a warrant and that it is only in the light of those circumstances and that need that the warrantless search meets the ultimate test of avoiding condemnation under the Fourth Amendment as 'unreasonable.' *Dorman, supra,* at 390–392."

*Accord: United States v. Reed,* 572 Fed.2d 413 (2d Cir. 1978) ; *People v. Ramey,* 127 Cal. Rptr. 629, 545 Pac.2d 1333 (1976) ; *Commonwealth v. Forde,* 367 Mass. 798, 329 N.E.2d 717 (1975) ; *United States v. Shye* (6th Cir. 1974), 492 Fed.2d 886; *Huotari v. Vanderport* (D.C. Minn. 1974), 380 Fed. Supp. 645.

We conclude that, absent exigent circumstances, the entry of one's dwelling without consent to effect a warrantless felony arrest on probable cause, is unlawful.[3]

---

[3] Our holding does not imply that warrantless arrests in general must be justified by exigent circumstances, but rather is limited to warrantless entries into one's home, without consent, for the purpose of making a warrantless arrest.

In the instant case there has been no showing of any exigent circumstances. The incident resulting in this prosecution occurred thirteen days prior to the arrest of the defendant. At the time of the incident she was taken into custody and released at the direction of an assistant district attorney in apparent anticipation of gaining the defendant's cooperation in the investigation of other drug transactions. The arresting officers gained access to her apartment, in her absence, by permission of her five-year old child. Furthermore, no reasons are advanced as to why the arrest took place at approximately midnight. By timely objections, the defendant has at all times maintained the arrest was unlawful and that the trial court did not have personal jurisdiction.

■

It is our determination that, under the facts of this case, the arrest of the defendant was unlawful and the trial court did not acquire personal jurisdiction of the defendant. Therefore the judgment of conviction must be reversed.

In view of our disposition of the case, we do not reach the other issues raised by the defendant.

*By the Court.*—Judgment reversed.

SHIRLEY S. ABRAHAMSON, J. *(concurring)*. The principle which assures citizens the privacy and security of their homes is embodied in art. I, sec. 11 of the Wisconsin Constitution[1] as well as in the fourth amendment to the United States Constitution.[2] It is important that

---

[1] Sec. 11, art. I, Wis. Const., provides:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

[2] Fourth Amendment, U. S. Const., provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

the independent state constitutional basis of our decision be emphasized. The United States Supreme Court has repeatedly remanded cases to state supreme courts with the direction that the state court specify whether its decision rests on the state constitution, the federal constitution, or both. *See e.g., California v. Krivda,* 409 U.S. 33 (1972). Just this year, the United States Supreme Court directed that we articulate the constitutional basis of our decision in *State ex rel. Terry v. Schubert,* 74 Wis.2d 487, 247 N.W.2d 109 (1976). *Percy v. Terry,* 434 U.S. 808, 98 S. Ct. 40 (1977).

Long before it was constrained to do so by the fourth and fourteenth amendments to the United States Constitution, this court relying on the Wisconsin Constitution sustained and enforced the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. In *Hoyer v. State,* 180 Wis. 407, 417, 193 N.W. 89 (1923), Mr. Justice Eschweiler, writing for the court, described the importance of sec. 11, art. I of the Wisconsin Constitution to the people of the state as follows:

"Sec. 11, art. I, Wis. Const., *supra,* is a pledge of the faith of the state government that the people of the state, all alike (with no express or possible mental reservation that it is for the good and innocent only), shall be *secure* in their persons, houses, papers, and effects against unreasonable search and seizure. This security has vanished and the pledge is violated by the state that guarantees it when officers of the state, acting under color of state-given authority, search and seize unlawfully. The pledge of this provision and that of sec. 8 are each violated when use is made of such evidence in one of its own courts by other of its officers. That a proper result—that is, a conviction of one really guilty of

shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

an offense—may be thus reached is neither an excuse for nor a condonation of the use by the state of that which is so the result of its own violation of its own fundamental charter."

Mr. Chief Justice Vinje similarly viewed the state constitutional guarantee against unreasonable search and seizure as a fundamental part of the organic law of this state:

". . . It is also said that, if searches such as this cannot be made, the prohibition law cannot be enforced. This may be true in part or it may be true in whole. The answer is that an article of the constitution having its origin in the spirit if not in the letter of the Magna Carta prevents it, and that it is the duty of the court to sustain and enforce the constitution in its entirety, and not to permit what may seem to be presently a desirable mode of procedure to annul such fundamental portions of our organic law as the freedom from unlawful searches. The importance of such a provision may be lost sight of in times of peace in a well-organized and well-administered state, but in times of stress or dissensions its value is as great as those who inserted it in the constitution conceived it to be." *Jokosh v. State,* 181 Wis. 160, 163, 193 N.W. 976 (1923).

Our decision today is in keeping with this court's longstanding interpretation of sec. 11, art. I of the state constitution.