STATE of Wisconsin, Plaintiff in error,

v.

Chauncey William DOYLE, Defendant in error-Petitioner.
[Case No. 77–417–CR.]

STATE of Wisconsin, Plaintiff in error,

v.

Steven Craig HANDLER, Defendant in error-Petitioner.
[Case No. 77–418–CR.]

Supreme Court

*Nos. 77–417–CR, 77–418–CR. Argued April 1, 1980.—
Decided May 6, 1980.*

(Also reported in 291 N.W.2d 545.)

For the defendants in error-petitioners the cause was argued by *Jack E. Schairer,* assistant state public defender, with whom on the briefs were *Richard L. Cates,* state public defender, and *Ruth S. Downs,* assistant state public defender.

For the plaintiff in error the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the briefs were *Bronson C. La Follette,* attorney general, and *Edward S. Marion,* assistant attorney general.

COFFEY, J. Chauncey Doyle was charged with possession of marijuana with intent to deliver. Steven Handler was charged with being a party to the crime of possession of marijuana with intent to deliver. The trial court dismissed the criminal complaints against each of the defendants, finding that the police lacked probable cause to make an arrest.

The record establishes that on July 7, 1977, at approximately 3:30 p.m. two citizen informants, Mark and Leigh Livermore, observed a rust and white colored 1971 Oldsmobile Delta 98 stopped along County Highway F. They saw a young, blond male, wearing cut-off jeans and shirtless, place a green, leafy vegetable material into the trunk of the same Oldsmobile Delta 98 they had earlier observed. A second individual was observed sitting in the automobile. Approximately 15 minutes later, the Livermore brothers noticed the vehicle again parked at a different location along County Highway F and observed the same blond male putting more green, leafy vegetable material into the car trunk. Leigh Livermore, who was familiar with marijuana as a result of his time in service with the armed forces in Vietnam, believed the green, leafy plantlike material to be marijuana. The Livermore brothers immediately reported their observations to Officer Robert Widiker, of the Hudson Police Department, who in turn relayed the information, along with a description of the occupants and the automobile, to his police chief.

Approximately 30 minutes later, Officer Widiker and another patrolman (Morrissette) observed a vehicle matching the description given by the Livermore Brothers at the A & W Root Beer stand in the Hudson area. The officers followed the automobile as it left the root beer stand and shortly thereafter observed the 1971 Oldsmobile Delta 98 "go through a stop sign" and stopped the vehicle for an arterial highway violation. The police approached the vehicle and asked the driver for his license, who replied that he did not have his license on his person. Since the car was from out of state (Minnesota license plates), the officers conducted a driver's license check with the Minnesota authorities to determine the status of the operator's license. The license check identified the driver of the automobile as Chauncey

Doyle, one of the defendants. The passenger in the car identified himself as Steven Handler.

During the time the automobile was stopped for the traffic violation and prior to obtaining confirmation of the driver's license status, other police officers transported the Livermore brothers to the defendant's automobile. They identified the vehicle and the two occupants as the individuals they had earlier observed parked along County Highway F, one sitting in the car and the other loading bundles of marijuana into the car trunk. Following their identification and approximately 15 minutes after the vehicle was originally stopped, the police issued the defendant, Doyle, a warning ticket for failure to obey a stop sign. The police officer then asked for permission to look into the trunk of the car but Doyle refused to grant permission. Upon Doyle's refusal to allow the officer to look into the trunk, the patrolman told the defendants to remain in their vehicle. While the defendants remained in the car, the Livermores and two police officers returned to the locations along County Highway F where the defendants had previously been observed. The Livermores pointed out several green, leafy plants similar to those that they had seen the defendant Doyle place in the car trunk. Officer Widiker, based on his police training and experience, identified the plants as marijuana. The officers also noted that the ground in the area recently had been displaced as occurs when plants are pulled out of the ground, and further noticed that the grass adjacent thereto had recently been stepped down.

Following their observations and investigation, the police officers returned to the defendant's car and placed the defendants, Doyle and Handler, under arrest for possession of marijuana with intent to deliver.[1]

---

[1] Approximately 45 minutes had elapsed from the time the car was initially stopped until the time the defendants were placed under arrest. The arrest took place approximately 30 minutes after the police had issued the warning ticket.

After the arrest, the police had the defendant's car towed to the Hudson City Police Garage. The next day the police obtained and executed a search warrant for the defendant's automobile. Their request for a search warrant was based on the information the Livermores provided to the police and the personal observation of Officer Widiker at the two locations along County Highway F where marijuana was found. The search of the vehicle's trunk revealed "a large bundle, approximately 5 feet long, of freshly uprooted green, leafy material." It was subsequently found to be positive marijuana after the officers performed a Wisconsin law enforcement field test procedure.

Criminal complaints were then issued after the execution of the search warrant. The defendant, Doyle, was charged with possession with intent to deliver a controlled substance (marijuana), contrary to sec. 161.41 (1m), Stats.[2] Handler was charged with being a party to the crime of possession with intent to deliver marijuana, contrary to secs. 161.41(1m) and sec. 939.05, Stats.[3] Later that same day, an amended and more

---

[2] Sec. 161.41(1m), Stats., reads as follows:

"Except as authorized by this chapter, it is unlawful for any person to possess, with intent to manufacture or deliver, a controlled substance. Intent under this subsection may be demonstrated by, without limitation because of enumeration, evidence of the quantity and monetary value of the substances possessed, the possession of manufacturing implements or paraphernalia, and the activities or statements of the person in possession of the controlled substance prior to and after the alleged violation. Any person who violates this subsection with respect to:

"(a) . . ."

[3] Sec. 939.05 reads:

"**Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) . . ."

complete complaint was issued setting forth the personal observations of Mark and Leigh Livermore, along with those of Officers Widiker and Wiegand, as the basis for the charges issued against the defendants.

Following their initial court appearances, the defendants filed motions requesting "an order dismissing the complaint" for lack of personal jurisdiction on two separate grounds:

1. that the complaint contains insufficient facts to show probable cause that a crime has been committed and the defendants committed it; and

2. that the police lacked probable cause to arrest the defendants and thus their arrests were unlawful. The trial court denied the defendants' motion challenging the sufficiency of the complaints.[4] The trial judge at the hearing initially denied the defendants' motion alleging the arrests were invalid finding there was no probable cause, in the following language:

"The complaint in both these matters supports the State's position that a valid arrest was made."

Following the court's denial of the defendants' motions, the defense, without a motion to reopen, informally

[4] The present review instituted by the state is from the trial court's order dismissing the complaints on the ground that the arrest was invalid. The defendants have not appealed the trial court's order denying their motion for dismissal on grounds of insufficiency of the complaint. Thus, the question of the sufficiency of the complaint is not at issue before this court. However, if the issue had been raised, the trial court's finding would have been affirmed. A thorough review of the record establishes that the complaint in this case contained sufficient facts to demonstrate that the charged crime has probably been committed by the accused. *State v. O'Connor*, 77 Wis.2d 261, 252 N.W.2d 671 (1977) and *Ritacca v. Kenosha County Court*, 91 Wis.2d 72, 280 N.W.2d 751 (1979). *See also: State ex rel. Cullen v. Ceci*, 45 Wis.2d 432, 173 N.W.2d 175 (1970); *State ex rel. Evanow v. Seraphim*, 40 Wis.2d 223, 161 N.W.2d 369 (1968).

asked and received permission of the court to call the defendant, Doyle, to the stand in an attempt to rebut and overturn the court's finding that their arrests were valid. He testified that the police had pulled his car over for allegedly driving through a stop sign. Further, he testified that after approximately 15 minutes, Officer Morrissette issued him a warning ticket and the officer also asked whether he could look into the trunk of the vehicle, but Doyle refused to give him (Officer Morrissette) permission. Doyle stated that he was then told to "wait here" and the officer returned to his police car. At this time, Doyle said that additional cars arrived on the scene and the occupants of those cars, along with the police officer who stopped him, got out of their cars, "stood behind my car and talked" for about a half an hour. Nothing was said to him during this time. Thereafter, he was read his *Miranda* rights and placed under arrest for possession of marijuana.

At the conclusion of Doyle's testimony, the trial court stated:

"It was obvious from the testimony, and it's not controverted on the face of the complaint because it doesn't say anything more than that, that Officer Morrissette had stopped the vehicle, referred to the driver's license for going through the stop sign and so forth. Now the issue becomes one of whether or not in fact a ticket was given or whether in fact a warning ticket. The defendant has testified that he was given a warning ticket for going through the stop sign. The officer had completed his duty. He had completed his contact with the defendant Doyle at that time. He had no further reason having done that to hold him. Any further holding was an arrest without cause, and the Court would grant your motion to dismiss."

Thus, the trial court ordered that the criminal complaints charging the defendants with possession of marijuana with intent to deliver be dismissed.

The state then obtained writs of error requesting that this court reverse the orders of the trial court dismissing the complaints but rather to hold the defendants' arrests valid. In response, the defendants, Doyle and Handler, each filed a motion to dismiss the state's review on the ground that the order dismissing the criminal complaints was not appealable, pursuant to sec. 974.05, Stats.[5] This court, in orders dated July 18, 1978, denied the defendants' motions to dismiss the state's appeal, stating:

". . . the court having determined that the order in question is a final order adverse to the state made before jeopardy had attached, and therefore is appealable under sec. 974.05 (1) (a), Stats., see: State v. Bagnall, 61 Wis. 2d 297, 212 N.W.2d 122 (1973)."[6]

This court ordered the case transferred to the court of appeals for consideration on the merits.

The court of appeals reversed the trial court's order dismissing the complaints. The court held that the dis-

---

[5] Sec. 974.05, Stats., reads:

"974.05 **State's appeal.** (1) Within 45 days of entry of the judgment or order to be appealed and in the manner provided for civil appeals under chs. 808 and 809, an appeal may be taken by the state from any:

"(a) Final order or judgment adverse to the state made before jeopardy has attached or after waiver thereof or after the setting aside of a verdict of guilty or finding of guilty or no contest.

"(b) Order granting post-conviction relief under s. 974.02 or 974.06.

"(c) Judgment and sentence or order of probation not authorized by law.

"(d) Order or judgment the substantive effect of which results in:

"1. Quashing an arrest warrant;

"2. Suppressing evidence; or

"3. Suppressing a confession or admission.

"(2) . . . ."

[6] On review, the defendants have again contended that the trial court's order dismissing the complaints was not an appealable order.

positive issue on appeal was the propriety of the defendants' pre-arrest detention and didn't deal with the probable cause issue. The court concluded that:

"The officers, having specific facts in their possession sufficient to allow them to reasonably believe that the occupants of the vehicle were engaged in criminal activities, had reasonable cause to stop the vehicle and detain its occupants pending the continuing investigatory efforts. The detention being reasonable and the defendants having been promptly placed under arrest after a detention of brief duration, the arrests were valid and the orders dismissing the complaints must be reversed."

The defendants have petitioned this court to review the decision of the court of appeals reversing the trial court's dismissal of the respective complaints.

*Issue:*

1. Did the police have sufficient probable cause to arrest the defendants for possession of marijuana with intent to deliver?

On appeal, the defendants contend that the court of appeals erred in reversing the trial court's order dismissing the complaints. Specifically, they claim the trial court correctly held that when Doyle and Handler were detained in their automobile without any explanation for over a half hour after the warning ticket had been issued, they had in effect been placed under arrest. Secondly, they claim the arrest was unlawful as the police lacked probable cause for a valid arrest.

The trial court and court of appeals arrived at different conclusions as to whether the defendants were under arrest and when. The trial court ruled that the defendants were in essence under arrest at the time the officer issued a warning ticket for a traffic violation and continued to hold them in custody. Moreover, the trial court found the arrest for possession of marijuana with intent to deliver to be unlawful as being

without probable cause. The court of appeals, on the other hand, held that the defendants were not under arrest at this time and, therefore, not in custody following issuance of the warning ticket, but were merely temporarily detained[7] pending further investigation of a possible violation of the drug laws (possession of marijuana with intent to deliver). Furthermore, the court of appeals held that the defendants' arrest for possession of marijuana with intent to deliver, following a detention of a brief and reasonable duration, was valid.

In *Huebner v. State,* 33 Wis.2d 505, 147 N.W.2d 646 (1967), this court held that a person is considered to be under arrest when three elements are present: (1) his liberty or freedom of movement is restricted, (2) the arresting officer intends, at that time, to restrain the person and (3) the person under arrest believes or understands that he is in custody:

". . . if the law-enforcement officer by order or conduct indicates the person is obliged to remain in the officer's presence or to come to the police station, such person is for practical purposes arrested because of the imposition of the will of the police officer over the freedom of the person. *The central idea of an arrest is the taking or detaining of a person by word or action in custody so as to subject his liberty to the actual control and will of the person making the arrest. State v. Phillips* (1952), 262 Wis. 303, 308, 55 N.W. (2d) 384. The same result is reached by a voluntary submission to such custody. But *there must exist the intent to take into custody and a corresponding understanding by the person arrested that he is in 'custody,' although no formal declaration of arrest is required.* 5 Am. Jur. (2d), Arrest, p. 695, sec. 1. *Peloquin v. Hibner* (1939), 231 Wis. 77, 84, 285 N.W. 380. For a discussion of Stopping to Question v. Arrest, see Dahl & Boyle, Procedure and

---

[7] *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1967).

The Law of Arrest, Search & Seizure, p. 11. This problem is also one of the subjects covered in Draft 1 of the Model Code of Pre-Arraignment Procedures in Criminal Cases of the American Law Institute." (Emphasis supplied.) *Id.* at 516–17.

Similarly, in *State v. Beaty,* 57 Wis.2d 531, 205 N.W.2d 11 (1973) this court stated as follows:

"The United States Supreme Court has distinguished arrest from stopping to question a suspect, terming arrest 'a wholly different kind of intrusion upon individual freedom than a limited search for weapons,' with the 'interests each is designed to serve . . . likewise quite different.' *An arrest, the high court stated, is 'inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows.'* . . . Obviously, stopping a suspect to question him—and to frisk him for weapons—does not involve such certainty of continued or future restraint. It may, but not necessarily so." (emphasis supplied). *Id.* at 537.

An examination of the record establishes that the three elements of an arrest, set forth in *Huebner v. State, supra,* were present in this case. The detention of the defendants, Doyle and Handler, following issuance of the warning ticket, restricted their freedom of movement. Clearly, the defendants' liberty was curtailed and they were subject to "the actual control and will of the person [officer] making the arrest." Secondly, there is evidence in the record to support the view that the officer *intended* to restrict or restrain the defendants' liberty. After handing the defendant (Doyle) the warning ticket and after being denied permission to look into the trunk of the defendant's car, the police officer told the defendants "Okay, wait here." and returned to his car. A half hour later the officer returned to the car and formally placed the defendants under arrest. The delay, from the initial time they were detained until the

time they were formally declared to be under arrest, was due to the fact that the police, in the performance of good police investigative work, were attempting to obtain further confirmation that the defendants were in fact in possession of marijuana. The officers were then in the process of checking the areas along County Highway F where the defendants were observed loading a green, leafy vegetable material into their car trunk. It is evident that the police officers *intended* to take the defendants into custody after issuance of the warning ticket, and were merely waiting until they had confirmation of the information given to them from the lay witnesses. The third and last element for an arrest is concerned with whether or not the defendants understood that they were in custody. The totality of the circumstances in this case supports the view that the defendants understood that they were in custody when they received the warning ticket and were told to "wait here," thus detained. A person, identified to them as a police officer, told the defendants that they were to remain in their car and wait further instructions. Subsequently, several additional cars arrived at the scene and the officer talked to the occupants of those cars for approximately a half hour. During this time nothing was said to the defendants. Under the circumstances, it is evident that the defendants reasonably understood that they were in custody when they were told to "wait here" after refusing the officer permission to look into the car trunk and remained in the custody of the officers for the next half hour. Therefore, we hold that the defendants were in effect under arrest from the time a warning ticket was issued. The question that we must next determine is whether the police had sufficient probable cause to arrest the defendants at that point in time.

In *Leroux v. State,* 58 Wis.2d 671, 207 N.W.2d 589 (1973) this court held that:

"*Probable cause for an arrest without a warrant requires more than an officer's subjective good-faith belief or mere suspicion. However, probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support conviction, and the quantum of evidence required to establish probable cause is less than that which would justify conviction.* The court, in *Draper v. United States* (1959), 358 U.S. 307, 313, 79 Sup. Ct. 329, 3 L. Ed.2d 327, defined 'probable cause' as:

" 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Brinegar v. United States, supra*, at 175 [ (1949), 338 U.S. 160, 69 Sup. Ct. 1302, 93 L. Ed. 1879]. *Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. Carroll v. United States,* 267 U.S. 132, 162.'

"Similarly, this court in *Kluck v. State* (1967), 37 Wis. 2d 378, 389, 155 N.W.2d 26, stated:

" 'Probable cause exists if the facts and circumstances known to the police officer warrant a prudent man in believing an offense has been committed. . . . [citing *Henry v. United States* (1959), 361 U.S. 98, 80 Sup. Ct. 168, 4 L. Ed.2d 134]. *Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime.*' " (Emphasis supplied.) *Id.* at 682-84.

Moreover, in *Loveday v. State,* 74 Wis.2d 503, 247 N.W. 2d 116 (1976), this court held:

"In *Leroux v. State,* 58 Wis.2d 671, 683-84, 207 N.W. 2d 589, 595-96 (1973), this court made clear the rule that probable *cause for arrest exists if the facts and circumstances known to the police officer and of which he has reasonably trustworthy information warrant a prudent man in believing an offense has been committed*

*and that the defendant probably committed it. In de-*
*termining whether probable cause existed for the arrest*
*without warrant, the test is whether, on the basis of the*
*information he had, the arresting officer could have ob-*
*tained a warrant for the defendant's arrest. State v.*
*Paszek,* 50 Wis.2d 619, 627, 184 N.W.2d 836, 840–41
(1971)." (Emphasis supplied.) *Id.* at 523.

A thorough review of the record in this case estab-
lishes that the police had probable cause to arrest the
defendants.

1. Two citizens, Mark and Leigh Livermore, con-
tacted the police and stated that they had observed two
occupants of a 1971 rust and white Oldsmobile Delta 98
stopped alongside County Highway F at two separate
locations (15 minutes apart) and one of the occupants,
a blond male wearing cut-off jeans and shirtless, was
loading bundles of a green, leafy, plantlike material,
believed to be marijuana (based upon his in-service
knowledge and experience) into the car trunk while the
other occupant remained seated in the car.

2. The information provided by the Livermores was
reliable and trustworthy because it was based on personal
observation of two knowledgeable citizen eyewitnesses.
In *Aguilar v. Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L.
Ed.2d 723 (1964) the United States Supreme Court
established a two-pronged standard to test the probable
cause determination of a police officer:

". . . the two-pronged test of *Aguilar* requires that
the officer must establish: (1) The underlying circum-
stances from which he concludes that the informant is
reliable; and (2) That the underlying circumstances or
manner in which the informant obtained his informa-
tion is reliable." *State v. Paszek, supra* at 627.

This court has held that when applying the test of
*Aguilar* there is a difference between "citizen-informers"
and "police contacts or informers who usually them-

selves are criminals." *Id.* at 630. In *State v. Knudson,* 51 Wis.2d 270, 187 N.W.2d 321 (1971), this court, quoting from *People v. Bevins,* 6 Cal. App.3d 421, 85 Cal. Rptr. 876 (1970) held that: *"A citizen who purports* to be a victim of or *to have witnessed a crime is a reliable informant even though his reliability has not theretofore been proved or tested." Id.* at 276. In this case the citizen informants, Leigh and Mark Livermore, were witnesses to a crime, possession of marijuana with intent to deliver. They had personally observed a 1973 Oldsmobile Delta 98 parked along Highway F. They saw two individuals, one sitting in the car while the other was placing what they believed to be marijuana in the trunk of the car. As witnesses to a crime, they are considered to be reliable informants and thus meet the first prong of the *Aguilar* test. This court, however, recognized that there must be some type of evaluation of the reliability of victim and witness informants, although the standard to be applied is much less stringent:

" '[T]he reliability of such a person should be evaluated from the nature of his report, his opportunity to hear and see the matters reported, and the extent to which it can be verified by independent police investigation.' . . . However, there must be some safeguard, and this can be satisfied by verification of some of the details of the information reported, but it need not be to the same degree as required in evaluating the 'tips' of a police informer.

"Essentially, the search for reliability in the case of a citizen informer is shifted to the second prong of the *Aguilar* test, *i.e.,* from personal reliability to 'observational' reliability." *State v. Knudson, supra* at 277. *See also: Allison v. State,* 62 Wis.2d 14, 214 N.W.2d 437 (1974) and *State v. Marshall, supra.*

The information provided by Leigh and Mark Livermore was based on their personal observations. They made these observations on two separate occasions ap-

proximately 15 minutes apart as they drove past the defendant's car along Highway F. The Livermores provided the police with a description of the two individuals and the car. The police subsequently verified the Livermores' information concerning the vehicle and its two occupants. Thereafter, the Livermores identified the defendants (Doyle and Handler) as the individuals they earlier observed parked alongside of County Higway F. One of the eyewitnesses, Leigh Livermore, identified the defendant as placing the green, leafy, vegetable material, believed to be marijuana, into the trunk of his car. He was familiar with the drug, based on his knowledge and observation of the drug while serving in the armed forces in Vietnam. Therefore, in light of the fact that the information the Livermore Brothers provided to the police was based on their personal observations and Leigh Livermore's knowledge of marijuana, we hold that the reliability of the witnesses' information was established and thus the second prong of the *Aguilar* test is satisfied.

On appeal, the defendants challenge Leigh Livermore's ability to identify marijuana. While we recognize that he was not a chemist or an expert on drugs, this court has held in *State v. Paszek,* 50 Wis.2d 619, 184 N.W.2d 836 (1971) that an expert's opinion is not required, at the probable cause stage of the criminal proceedings, to establish that the substance at issue was a controlled substance such as marijuana:

"Clearly, Mrs. Darling was not qualified to give an expert opinion as to the nature of the substance which defendant offered to sell her. However, such scientific accuracy was not required at this stage. Her opinion that the substance was marijuana was used in the realm of establishing probable cause, not to uphold a conviction. Her observation of the substance, coupled with defendant's statement to her that it was marijuana, was amply sufficient to sustain her opinion." *Id.* at 629. *See also: State v. Johnson,* 54 Wis.2d 561, 126 N.W.2d

717 (1972) ; *Kluck v. State,* 37 Wis.2d 378, 155 N.W.2d 26 (1967).

In *State v. Paszek, supra,* the witness' prior exposure to marijuana was limited to seeing pictures of it in a "general, nonscientific magazine, and once having seen some at a distance of between 20 to 30 feet in a courtroom." *Id.* at 629. This court nevertheless held that this lay testimony that the substance the defendant offered to sell her was marijuana was sufficient to establish probable cause. Moreover, in *Simpson v. State,* 62 Wis. 2d 605, 215 N.W.2d 435 (1974), this court held that:

"The general rule in Wisconsin is that the admission of opinion evidence rests largely in the discretion of the trial court. *York v. State* (1970), 45 Wis.2d 550, 559, 173 N.W.2d 693. The opinion testimony of lay witnesses has been admitted in evidence on many subjects. It has been considered on the issue of insanity. *Lowe v. State* (1903), 118 Wis. 641, 96 N.W. 417; *Duthey v. State* (1907), 131 Wis. 178, 111 N.W. 222; *Robinson v. State* (1910), 143 Wis. 205, 126 N.W. 750." *Id.* at 609.

This court has also held that ". . . a lay witness may give his opinion as to intoxication from the actual observation of the subject. . . ." *State v. Bailey,* 54 Wis. 2d 679, 685, 196 N.W.2d 664 (1972).

In this case, Leigh Livermore's past exposure and familiarity with marijuana—having "observed many different forms of marijuana" while in the service in Vietnam—was sufficient to meet the standard set forth in *State v. Paszek, supra.* Therefore, we find as a matter of law, based on Leigh Livermore's personal observation of the defendants and his prior familiarity with marijuana, that he was able to identify the defendants and the green, leafy, vegetable material Doyle was placing in his car trunk as marijuana.

Therefore, we hold, based on the information provided by the Livermores, that the police had sufficient evi-

dence to establish probable cause to arrest the defendants for possession of marijuana with intent to deliver.

Finally, the defendants have again contended that the trial court's order dismissing the complaints was not an appealable order. This court previously held, in orders dated July 18, 1978, that the trial court's order dismissing the complaints as to each defendant was a final order and thus appealable pursuant to sec. 974.05(1)(a), Stats. In view of the fact that the question of appealability of the trial court's order has already been considered, we need not reconsider the issue again on appeal and thus it is summarily dismissed.

*By the Court.*—The decision of the court of appeals is affirmed and cause remanded to the circuit court for proceedings consistent with this opinion.