STATE of Wisconsin, Plaintiff-Appellant,

v.

Calvin R. KOLK, Defendant-Respondent.

Court of Appeals

*No. 2006AP31–CR. Submitted on briefs October 5, 2006.
—Decided November 22, 2006.*

2006 WI App 261

(Also reported in 726 N.W.2d 337.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Peggy A. Lautenschlager*, attorney general, and *Sarah K. Larson*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael D. Zell* of *Zell Peterson, LLC* of Milwaukee.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. BROWN, J. In this case, a roadside frisk led to the discovery of drugs without a prescription, providing the justification for the arrest of the defendant driver and a search of his vehicle that uncovered more drugs. The State argued before the trial court that the frisk was valid because there was reasonable suspicion that the driver was carrying drugs or, alternatively, that the driver consented to it. The trial court rejected the State's arguments and suppressed the drugs. The State renews these arguments on appeal, but we affirm the trial court. The reasonable suspicion argument fails because the citizen informant who first alerted police to the possible criminal activity of the driver did not demonstrate how he or she knew about the activities reported—a factor we believe the case law holds to be of utmost importance in considering a tip's reliability. Nor was the citizen informant's so-called "predictive infor-

mation" verified as to time and place such that it significantly strengthened the credibility of the tip. The argument that the driver consented also fails because at the time of the claimed consent, the driver was detained beyond the legal justification of the traffic stop and without reasonable suspicion.

¶ 2. The relevant facts are taken from the suppression hearing and are undisputed except where noted. On the morning of May 20, 2005, an investigator for the Washington County Sheriff's Department received a tip that Calvin Kolk was on his way to Milwaukee to pick up some Oxycontin. The informant identified him- or herself to the investigator and provided a date of birth, address and cell phone number, but wished to have that information kept confidential. The investigator had not had prior dealings with the informant. The informant spoke with the investigator four or five times over the course of the day, sharing information, though it is not stated in the record what this information was.

¶ 3. In response to the tip, an officer drove past Kolk's house and noted that Kolk's car was parked there. The informant called back later and stated that Kolk had already been to Milwaukee and had returned and would leave that afternoon for Madison. The informant provided a description of Kolk and his automobile. A team of officers was sent to Kolk's residence and set up surveillance.

¶ 4. Eventually, the surveilling officers observed Kolk exit the house and get into his vehicle. He drove north on Highway 175, and at one point exceeded the speed limit, going sixty-two in a fifty-five mile per hour zone. The officer who witnessed the speeding radioed to another officer, who pulled Kolk's vehicle over after

104

Kolk had turned westbound on County Trunk S. The officer who stopped Kolk also noted that his windshield was cracked.

¶ 5. The officer approached Kolk's window and asked for his driver's license. Kolk complied, and the officer told him that he had been stopped for speeding and for the cracked windshield. The officer told him that he would receive a written warning and then took Kolk's license and returned to his squad car. At some point, the officer returned to Kolk's vehicle and asked for his registration. When Kolk opened the glove compartment to retrieve his registration, the officer noted that it also contained a pill bottle. The officer took the pill bottle to his squad car and eventually determined that it contained legal dietary supplements. The officer again returned to Kolk's vehicle.

¶ 6. Here the testimony of Kolk and the officer diverge. Both agree that the officer returned Kolk's license and registration to him. The officer testified that he also gave Kolk the written warning at this point. Both agree that the officer asked Kolk if he had any drugs or weapons in the vehicle and that Kolk responded that he did not. The officer asked Kolk whether he could search the vehicle; the officer testified that Kolk said it would be okay. Kolk testified that he refused the officer's request, and the officer asked again; Kolk again refused, and the officer asked a third time, at which point Kolk finally relented, believing he had no choice but to allow the search. According to Kolk, after he consented, the officer again returned to his squad car and upon returning to Kolk's vehicle, asked him to get out. Kolk testified that the officer also gave him the written warning at this time.

¶ 7. At this point, the officer's and Kolk's testimony reconverge. When Kolk got out of the vehicle, the

officer told him that he was concerned for his safety and wished to pat-down Kolk for weapons. Kolk consented. The officer had noticed a bulge in Kolk's front pants pocket; when he frisked Kolk, he testified that he could tell that some of the items in the pocket were pill bottles, but that another object might have been a pocket knife. The officer removed the pill bottles from Kolk's pocket and identified the pills inside as oxycodone. Kolk stated that he did not have a prescription for the drugs, and so he was arrested. Another officer who had arrived on the scene searched Kolk's vehicle incident to the arrest and found more drugs.

¶ 8. Kolk moved the circuit court to suppress the drug evidence on the grounds that it was obtained in violation of his Fourth Amendment rights. After a hearing, the circuit court suppressed the evidence obtained in the searches of Kolk and his vehicle. The State moved for reconsideration, and the court denied the motion. The State appeals the suppression order and the order denying reconsideration.

¶ 9. Both Kolk and the State zero in on the frisk as the key moment in the encounter between Kolk and the officer, contesting issues of reasonable suspicion, danger to the officer, the permissible scope of the pat-down search, and consent. We agree that the frisk was a pivotal point in the investigation, since it turned up the first drugs and led to Kolk's arrest. However, we do not find it necessary to examine the issues of danger to the officer or the proper scope of a pat-down search. This case turns on the issues of consent and reasonable suspicion; one or the other must have been present in order for the frisk to be permissible. We hold that neither was, and so we need not inquire further. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (appellate court need not consider issues in an

appeal disposed of by decision on other issues). Absent the drugs found during the pat-down, Kolk's arrest was unsupported by probable cause, and so the search of the vehicle was not a legitimate search incident to arrest.[1] We will address reasonable suspicion and consent in turn.

¶ 10. The questions of the existence of either consent or reasonable suspicion under the Fourth Amendment are questions of constitutional fact. *State v. (Lawrence) Williams*, 2002 WI 94, ¶ 17, 255 Wis. 2d 1, 646 N.W.2d 834; *State v. (Roosevelt) Williams*, 2001 WI 21, ¶ 18, 241 Wis. 2d 631, 623 N.W.2d 106. We apply a two-step standard of review to such questions; we uphold the circuit court's findings of fact unless clearly erroneous, but determine de novo whether the facts as found demonstrate a constitutional violation. *(Roosevelt) Williams*, 241 Wis. 2d 631, ¶ 18.

¶ 11. Warrantless searches are per se unreasonable under the Fourth Amendment. *State v. Jones*, 2005 WI App 26, ¶ 9, 278 Wis. 2d 774, 693 N.W.2d 104, *review denied*, 2005 WI 134, 282 Wis. 2d 720, 700 N.W.2d 272. However, a police officer may conduct a frisk for weapons where " 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety and that of others was in danger' because the individual may be armed with a weapon and dangerous." *State v. Kyles*, 2004 WI 15, ¶ 10, 269 Wis. 2d 1, 675

---

[1] Nor was the vehicle search independently justified by probable cause, a higher standard than the reasonable suspicion that we find missing. *See State v. Pallone*, 2000 WI 77, ¶ 58, 236 Wis. 2d 162, 613 N.W.2d 568 (vehicle search not incident to arrest requires probable cause to believe that vehicle contains object of search).

N.W.2d 449 (citation omitted). Though the rule is often stated as if suspicion of a concealed weapon were the only criterion for a pat-down, it is also necessary that the officer have the right to detain the individual in the first place. *See Terry v. Ohio*, 392 U.S. 1, 32 (Harlan, J., concurring) ("[I]f the frisk is justified in order to protect the officer during an encounter with a citizen, the officer must first have constitutional grounds to insist on an encounter, to make a *forcible* stop."); *see also* 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT, § 9.6(a), at 615–17 (4th ed. 2004). This in turn requires reasonable suspicion that the individual is committing, is about to commit, or has committed a crime. *See (Roosevelt) Williams*, 241 Wis. 2d 631, ¶ 21; WIS. STAT. § 968.24 (2003–04).[2] Therefore, the first question we must address is whether the police had information that could give rise to reasonable suspicion that Kolk was in possession of drugs[3] such that they were justified in detaining him.[4]

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[3] It is unclear from the record exactly what the officer who detained Kolk knew about the basis for suspecting Kolk of drug possession, since he acted at the direction of another officer who had communicated with the informant. Under the doctrine of collective knowledge, however, where an officer relies on the directive of another officer to detain someone, we examine all of the information in the possession of the police department and determine whether that information justifies the detaining officer's action. *See State v. Cheers*, 102 Wis. 2d 367, 389, 306 N.W.2d 676 (1981) ("Where an officer relies upon a police communication in making an arrest, in the absence of his personal knowledge of probable cause, the arrest will only be based on probable cause, and thus valid, when such facts exist within the police department." (Citations omitted.)).

[4] We stress that the propriety of the initial stop is not at issue; the detention to which we here refer is that which existed

¶ 12. The State contends that the information the officers received from the informant was sufficient to create a reasonable suspicion that Kolk was in possession of drugs. The circuit court rejected the State's argument, labeling the tipster a "confidential informant." Both the State and Kolk agree that the tipster here is best characterized as a citizen informant, and we also concur. Though there is some confusion in the case law, we believe that the distinction is that a confidential informant is a person, often with a criminal past him- or herself, who assists the police in identifying and catching criminals, while a citizen informant is someone who happens upon a crime or suspicious activity and reports it to police. *See State v. Doyle*, 96 Wis. 2d 272, 286–87, 291 N.W.2d 545 (1980) ("[T]here is a difference between 'citizen-informers' and 'police contacts or informers who usually themselves are criminals.' " (Citation omitted.)), *overruled on other grounds, State v. Swanson*, 164 Wis. 2d 437, 475 N.W.2d 148 (1991). The difference between the two calls for different means of assessing credibility; in particular, a confidential informant may be trustworthy where he or she has previously provided truthful information, *State v. Paszek*, 50 Wis. 2d 619, 630, 184 N.W.2d 836 (1971), while a citizen informant's reliability is subject to a much less stringent standard. *Doyle*, 96 Wis. 2d at 287; *see also (Roosevelt) Williams*, 241 Wis. 2d 631, ¶ 36 n.12 (maintaining lower scrutiny for citizen informant despite abrogation of test stated in *Aguilar v. Texas*, 378 U.S. 108 (1964)). Both may be distinguished from

---

after the business of the traffic stop had concluded. The existence and nature of that detention is addressed in our discussion of consent below.

an anonymous informer, one whose identity is unknown even to the police and whose veracity must therefore be assessed by other means, particularly police corroboration. *See Alabama v. White*, 496 U.S. 325, 329 (1990).

■

¶ 13. Our courts recognize the importance of citizen informants and accordingly apply a relaxed test of reliability that shifts from a question of "personal reliability" to one of "observational reliability." *(Roosevelt) Williams*, 241 Wis. 2d 631, ¶ 36 (citations omitted). However, "there must be some type of evaluation of the reliability of victim and witness informants, although the standard to be applied is much less stringent." *Doyle*, 96 Wis. 2d at 287. "(T)he reliability of such a person should be evaluated from the nature of his report, his opportunity to hear and see the matters reported, and the extent to which it can be verified by independent police investigation." *Id.* (citation omitted).

¶ 14. The State relies on *(Roosevelt) Williams*, in which our supreme court upheld a police detention and search of the occupants of a parked vehicle based upon a 911 call reporting that the occupants were selling drugs. *(Roosevelt) Williams*, 241 Wis. 2d 631, ¶¶ 2–5. The caller provided the 911 operator with a contemporaneous description of the vehicle, which the caller could see through her apartment window. *Id.*, ¶¶ 4, 118 (Bablitch, J., dissenting). The caller reported that the occupants of the van were "giving customers . . . drugs." *Id.* On arriving on the scene a few minutes later, the police were able to confirm the description, location, and number of occupants of the vehicle. *Id.*, ¶ 39. The court found the observational reliability of the informant sufficient to justify the detention and search on

two grounds particularly relevant here. First, the informant "explain[ed] exactly how she [knew] about the criminal activity she [was] reporting: she [was] observing it . . . . [T]he tipster here has made plain that she is an eyewitness." *Id.*, ¶ 33. Second, the police were able to confirm innocent details of the information provided by the caller, further bolstering the credibility of the tipster. *Id.*, ¶¶ 39–40.

¶ 15. We find the differences between this case and *(Roosevelt) Williams* more significant than the similarities. First, the evidence presented to the circuit court contains absolutely no suggestion of how the informant here knew about the legal or illegal activities ascribed to Kolk. This stands in marked contrast to *(Roosevelt) Williams*, and is a significant consideration in determining the "observational reliability" of the tip. The second word of the term "citizen witness" is not meaningless; as the court stated in *(Roosevelt) Williams*, "we view citizens *who purport to have witnessed a crime* as reliable, and allow the police to act accordingly, even though other indicia of reliability have not yet been established." *Id.*, ¶ 36 (emphasis added). Where an informant does not give some indication of how he or she knows about the suspicious or criminal activity reported, we agree with the circuit court that it bears significantly on the reliability of the information. The tip here might have been based on first-hand knowledge, but it might also have been the product of rumor or speculation. We do not know, either because the informant did not tell the police or because the police did not tell the circuit court. As such, the tip's reliability here is much weaker than that of the tip in *(Roosevelt) Williams*.

¶ 16. Further, contrary to the State's claims, the innocent details that the police were able to corroborate

in this case were much less significant than those in *(Roosevelt) Williams*. The record reveals that the informant correctly gave police Kolk's identity and described his vehicle. That the informant possessed such readily available information does not, to us, significantly bolster the reliability of the informant's other claims. *Cf. Illinois v. Gates*, 462 U.S. 213, 245 (1983) (an informant's verified knowledge of more personal information suggested a familiarity with other aspects of defendants' activities). The informant also stated that Kolk would go to Milwaukee and return. The State seems to suggest that this information was corroborated by police, but this is not so; rather, it was the informant who "corroborated" his or her own report by calling back and stating that Kolk had gone to Milwaukee and returned. Finally, the informant told police that Kolk would leave for Madison. Kolk did in fact get in his car and drive off. However, as the State admits, the route that he took, heading first north on Highway 175 and then west on Highway S, was certainly not a beeline to Madison, and so the weight of this verified detail is questionable.

¶ 17. To recapitulate, the police were able to corroborate: (1) Kolk's identity; (2) what kind of vehicle he drove; and (3) the fact that he would drive it, possibly on the way to Madison. This information strikes us as both more widely available and less significant than that in *(Roosevelt) Williams*, in which the informant provided specific information about the drug transactions that she was witnessing, and we hold it insufficient to uphold Kolk's detention.

¶ 18. The State nevertheless argues that the informant in this case was able to supply *predictive*

information that further strengthened the reliability of the tip. Predictive information is not necessary for a tip to be reliable, but it is one of the indicia of reliability that can bolster a tip's credibility. *(Roosevelt) Williams*, 241 Wis. 2d 631, ¶ 42. However, the informant's prediction, as discussed above, essentially amounts to the prognostication that Kolk would drive his vehicle in a direction that would not preclude his being headed to Madison. This is a much more general prediction than the ones police relied upon in *White*. In *White*, an anonymous tipster told police that a particular woman would be leaving a particular apartment building at a particular time of night, carrying a brown attaché case, which the tipster said would contain cocaine. *White*, 496 U.S. at 327. The tipster further predicted that the woman would drive her vehicle to a particular motel. *Id.* Officers observed the woman leave at the predicted time (though empty-handed), get into the described vehicle, and take the most direct route to the predicted motel, where they stopped her just short of her destination. *Id.* The Supreme Court upheld the stop, but called the case "close." *Id.* at 332. We believe this case falls on the opposite side of the line to which *White* was "close." Here, we have identification of a person and his vehicle, and the prediction that the person would drive the vehicle on a particular day, but we lack the precise confirmation of the time of departure or the destination found in *White*.[5]

---

[5] *See also State v. Sherry*, 2004 WI App 207, ¶¶ 21–22, 277 Wis. 2d 194, 690 N.W.2d 435 (upholding probable cause for search of a vehicle where informant provided information including the make of the car, the license plate number of the car, the approximate time of travel, the direction of travel, the car's likely general starting point, its apparent destination, the number of occupants, and that a particular male would be

¶ 19. The State correctly points out that neither direct observation of a crime nor predictive information are rigid requirements for a tip to be reliable. Rather, the presence of either can provide reason to believe that the tipster has truthful and accurate information. In a case like *(Roosevelt) Williams*, the fact that an informant is an eyewitness shows a basis for the informant's knowledge that makes it reasonable to believe in its accuracy. In a case like *White*, the basis for an informant's knowledge is not known by the police, but confirmed predictions can show that he or she is familiar enough with a person or situation to nevertheless be trusted. In this case, the officers received a tip that neither demonstrated a basis of knowledge nor allowed for much significant corroboration. We hold that under all of the facts and circumstances, the information possessed by the police was of insufficient reliability to justify Kolk's continued detention.

¶ 20. As alternate grounds for the pat-down, the State asserts that Kolk voluntarily consented to it, leading to the discovery of the drugs. A "search authorized by consent is wholly valid" under the Fourth Amendment. *(Lawrence) Williams*, 255 Wis. 2d 1, ¶ 19 (citation omitted). Such consent must be voluntarily given and consent will not sustain a search if it is given during an illegal seizure. *See id.*, ¶¶ 18, 20; *see also State v. Bermudez*, 221 Wis. 2d 338, 353–54, 585 N.W.2d 628 (Ct. App. 1998). The test for whether a person is seized is whether, considering the totality of the circumstances, a reasonable person would believe that he or

driving the female passenger's car), *review denied*, 2005 WI 1, 277 Wis. 2d 151, 691 N.W.2d 354.

she is free to leave or otherwise terminate the encounter. *State v. Luebeck*, 2006 WI App 87, ¶ 7, 292 Wis. 2d 748, 715 N.W.2d 639, *review denied*, 2006 WI 113, 296 Wis. 2d 62, 721 N.W.2d 485.

¶ 21. Both parties agree that Kolk was lawfully seized when the officer pulled him over and conducted the traffic stop for speeding and the cracked windshield. Both further agree that Kolk was never "unseized"; that is, the State does not argue that this is a case like *(Lawrence) Williams*, 255 Wis. 2d 1, ¶ 35, in which the court held that the traffic stop had ended and the defendant was free to leave when the officer asked for consent to search and that the defendant's consent was therefore voluntary. Rather, the State claims that this case is governed by *State v. Gaulrapp*, 207 Wis. 2d 600, 558 N.W.2d 696 (Ct. App. 1996). In that case, police officers stopped the defendant for a noisy muffler. During the course of the stop, the officers asked the defendant if he had any drugs or weapons, and he responded that he did not. *Id.* at 603. The officers then asked if they could search him and his truck, and he agreed. *Id.* The officers found drugs in the truck and on the defendant's person. *Id.* at 603–04. On appeal from the circuit court's refusal to suppress the drugs, the defendant claimed that the search requests broadened the investigation beyond what the loud muffler could justify. *See id.* at 608. We rejected this position, stating that the issue was not the subject matter of the questioning, but whether the duration of the stop was unreasonably prolonged by the question and the request to search. *Id.* at 609. Holding that it was not, we upheld the search. *Id.*

¶ 22. Kolk argues that *Gaulrapp* is inapposite because the purpose of the traffic stop here had been satisfied when the officer asked permission to search for

drugs. Once the officer had returned Kolk's license and registration and completed the warning, Kolk maintains, the business of the traffic stop was concluded and the officer had no lawful authority to detain him further. He relies on *Jones*, 278 Wis. 2d 774, in which we upheld the suppression of evidence that was obtained under circumstances very similar to those in this case. In *Jones*, the officer stopped a motorist for speeding, questioned him and a passenger, and wrote out a warning citation. *Id.*, ¶¶ 2–3. The officer returned the motorist's and passenger's identification cards and then asked if there was anything illegal in the car, and whether he could search it. *Id.*, ¶ 4. The motorist said that he could, and the officer discovered a gun and drugs. *Id.* We upheld the circuit court's suppression of the gun and the drugs, holding that the traffic stop for speeding was concluded, but that unlike the defendant in *(Lawrence) Williams*, Jones was not in a situation in which a reasonable person would feel free to decline the officer's request. *Id.*, ¶ 21. Therefore, his detention had continued beyond its legal justification, and the search was invalid. *Id.*, ¶ 23.

¶ 23. The facts of this case are clearly aligned with those of *Jones*. Perhaps recognizing this, the State attempts to distinguish *Jones* only by claiming that the circuit court found that the traffic stop had *not* concluded when the officer asked permission to search Kolk, and that we should sustain this finding because it was not clearly erroneous. Even if we were to agree that such a finding was factual and thus required our deference, we think it plain from the record that the circuit court made no such finding.[6] The State refers us

---

[6] The State makes a similar argument about whether Kolk's consent was voluntary in light of the differing testimony as to

to three statements by the circuit court. The circuit court, discussing the time of the pat-down, did indeed say that "the traffic stop was nearly done" and "that particular stop had not concluded" in its oral ruling on the suppression motion, and "this traffic stop was not yet concluded" in its written denial of reconsideration. It is abundantly clear from the context of these statements, though, that the circuit court was simply stating that Kolk was still being detained at the time the officer asked to search him, not that the request came while the *traffic stop* was still legitimately being conducted.[7]

---

how many times the officer asked him if he could search the car. If, as Kolk claims, the officer refused to take "no" for an answer, it could not reasonably be said that Kolk's eventual consent was voluntary. *See State v. George*, 557 N.W.2d 575, 580–81 (Minn. 1997) (noting that "official and persistent" questioning may undermine consent; "Mere acquiescence on a claim of police authority or submission in the face of a show of force is, of course, not enough." (Citation omitted.)). The State claims that the circuit court found the officer's version of events to be the credible one. However, the portion of transcript the State cites, though ambiguous, appears to us to be an explanatory recapitulation of the officer's testimony, rather than an endorsement of it as true. It appears to us that the circuit court refrained from making a finding on this issue because it concluded, as we do, that Kolk was illegally seized at the time that he agreed to the search.

[7] This is made quite clear by the sentence immediately following the State's quotation from the denial of reconsideration. The entire paragraph reads: "What ever 'safe harbor' may be available in the *Badger Stop* methodology, the evidence shows that this traffic stop was not yet concluded. The defendant could not objectively conclude that he was free to go. This was a failed *Badger Stop*." (A "badger stop" occurs when a police officer attempts to obtain a person's consent to a search even though the officer has no legal basis to further detain the

¶ 24. In other words, what the State has pointed us to is the circuit court's implicit distinction between this case and *(Lawrence) Williams*, and its analogy to *Jones.* The difference between those cases was that in *(Lawrence) Williams*, the officer by his words and actions created a situation in which a reasonable person in the defendant's shoes would believe that he or she was free to leave, whereas in *Jones*, the defendant's detention continued after the business of the traffic stop was concluded. As we stated in *Jones*, 278 Wis. 2d 774, ¶ 17:

> We therefore read *[(Lawrence)] Williams* to require some verbal or physical demonstration by the officer, or some other equivalent facts, which clearly convey to the person that the traffic matter is concluded and that the person should be on his or her way. Absent that, it is a legal fiction to conclude that a reasonable person would deduce, infer or believe that he or she is free to depart the scene.

We agree with the circuit court that it would be a legal fiction to conclude that Kolk was not detained when the officer asked for consent to search him and his vehicle. The traffic stop had ended, but Kolk's detention had not; and given the lack of reliable information supporting further detention, the stop and its attendant searches were unlawful.

*By the Court.*—Orders affirmed.

person. *State v. Luebeck*, 2006 WI App 87, ¶ 13 n.3, 292 Wis. 2d 748, 715 N.W.2d 639, *review denied,* 2006 WI 113, 721 N.W.2d 485, 296 Wis. 2d 62.).