BRASH, J.
¶1 Andrew Anton Sabo appeals his judgment of conviction entered after he pled guilty to one count of possessing between five and fifteen grams of cocaine with intent to deliver as a second or subsequent offense, and two counts of being a felon in possession of a firearm. Sabo asserts that evidence seized from his residence during the execution of a search warrant should have been suppressed because the affidavit in support of the warrant failed to provide probable cause.
¶2 Sabo further argues that he made the required preliminary showing for a Franks-Mann[1] hearing relating to alleged false statements included in that affidavit, and, as such, the trial court erred in declining to hear his motion. Additionally, Sabo contends that the trial court erred when it denied his motion to compel disclosure of the identity of the informant who provided information that was included in the affidavit in support of the warrant. We affirm.
BACKGROUND
¶3 In January 2015, Officer Rodolfo Ayala of the Milwaukee Police Department was contacted by a citizen with information relating to the criminal activities of a man the citizen knew as "Drew." The citizen informant advised Officer Ayala that the informant had been inside a residence on West Burnham Street in Milwaukee within the past week and had seen a black semi-automatic pistol that belonged to Drew; the informant stated that Drew was a convicted felon and therefore prohibited from possessing the firearm. The informant had seen Drew load the firearm and was concerned that Drew would engage in violence. The informant also informed Officer Ayala that Drew conducted narcotics transactions, and that the informant had observed Drew at the residence weighing and packaging cocaine base for distribution. Additionally, the informant provided a name and phone number to Officer Ayala.
¶4 After receiving this information, Officer Ayala searched the Milwaukee Police Department database that tracks individuals who have had police contact, and was able to identify Drew as Sabo. Officer Ayala showed a previous booking photograph of Sabo to the informant, who identified Sabo as Drew. Officer Ayala then checked for any outstanding warrants and discovered that Sabo was on probation for possession of cocaine with intent to deliver and bail jumping, a felony offense.
¶5 Additionally, Officer Ayala conducted surveillance at the West Burnham Street residence. He observed Sabo leaning out of a window at the home and engaged in a conversation with him.
¶6 Based on this information as set forth in an affidavit submitted by Officer Ayala, a no-knock search warrant was issued for the West Burnham Street residence. The warrant was executed on the morning of January 27, 2015, by Officer Ayala and other investigating officers. During the search, they discovered the following evidence indicative of drug-dealing: multiple surveillance cameras mounted to the outside of the home, with live video feed displayed on a television in the living room; a black and silver semi-automatic pistol, loaded with twelve unspent cartridges in the magazine; a .44 Magnum revolver, loaded with six unspent cartridges in the magazine; a holster and additional boxes of ammunition; drug paraphernalia and packaging supplies such as digital scales, a marijuana grinder, two glass drug pipes, and a folding knife with suspected cocaine residue on it; over $ 700 in cash; marijuana plants, without buds, under a heat lamp in a closet; sandwich bags, several of which held a substance believed to be crack cocaine; and additional suspected crack cocaine on the kitchen counter that was loose and unbagged.
¶7 Sabo was arrested and charged with one count of possessing between five and fifteen grams of cocaine with the intent to deliver as a second or subsequent offense, and two counts of being a felon in possession of a firearm. Sabo filed a motion to suppress all of the evidence discovered during the execution of the search warrant. He argued that Officer Ayala's affidavit was insufficient to establish probable cause because it was based on information garnered from an "unproven informant" whose credibility had not been ascertained, and that it lacked sufficient detail to demonstrate that the informant's information was "sound." Additionally, Sabo moved the trial court to order the State to disclose the identity of the informant, pursuant to WIS. STAT. § 905.10(3)(c) (2015-16).[2] That statute allows a court to order the disclosure of an informer's identity if it is "not satisfied that the information was received from an informer reasonably believed to be reliable or credible[.]" See id.
¶8 Furthermore, Sabo requested a Franks-Mann hearing, asserting that Officer Ayala's affidavit contained false statements that were "material to a determination of probable cause." Specifically, Sabo contended that he has never been known by the nickname "Drew." Moreover, Sabo argued that the affidavit lacked details regarding the layout of the residence and the nature of the informant's supposed "relationship" with Sabo, such as whether the informant was involved in any drug transactions. Sabo also asserted that the surveillance video from the residence would show that six to seven other individuals were at the residence during the week prior to the execution of the warrant, and that he could obtain affidavits from all of them indicating that they were not the informant.
¶9 A hearing on Sabo's motions was held in August 2015. The trial court rejected the defense's argument relating to the lack of detail in the affidavit, agreeing with the State's position that the affidavit may have been purposefully vague to avoid the possibility of identifying the informant. The court further observed that the details of criminal activity given by the informant-that the informant saw cocaine being processed for distribution and that the informant saw Sabo loading a black semi-automatic pistol-were sufficiently specific to be credible. Additionally, the court pointed out that prior to requesting the search warrant, Officer Ayala had independently corroborated that Sabo was a convicted felon and that he resided at the address provided by the informant. Thus, the court found that because the informant was credible, and the information provided by the informant had been independently corroborated by the police, the affidavit was sufficient to establish probable cause for the warrant. Therefore, the court denied Sabo's motion to suppress and to disclose the identity of the informant.
¶10 The trial court also declined to hear Sabo's motion to set a Franks-Mann hearing. It agreed with the State that Sabo had failed to make the required preliminary showing that Officer Ayala had included false statements in his affidavit. Specifically, the State noted that the hearing for the motion to suppress had been set over several times to give the defense more time to obtain and file affidavits demonstrating that none of the individuals who appeared on the surveillance cameras at the residence were the informant; those affidavits had never been submitted.
¶11 Sabo subsequently renewed his motion for a Franks-Mann hearing and his request for disclosure of the identity of the informant. In that renewed motion, Sabo suggested that the information upon which Officer Ayala had based his affidavit was actually obtained from a 911 call made to police in January 2015, rather than from a citizen informant. The 911 caller had advised the dispatcher that "there were guns and drugs in 'Andrew Sabo's' residence." Sabo inferred that Officer Ayala had then falsified the information in his affidavit by "bootstrapping" facts about Sabo that were known to the police with information from the 911 caller. Sabo further asserted that in August 2015, the 911 caller had admitted to Sabo's counsel that the information he had given about Sabo in the 911 call was false; the caller stated that the reason for the lie was that he and Sabo had previously gotten into a physical altercation relating to the caller's niece, who was dating Sabo at the time.
¶12 At the hearing in January 2016 on Sabo's renewed motion, the State argued that there was no corroboration of the 911 call because the records of 911 calls for that time period had already been purged by the time it was requested. Thus, the State contended that Sabo still had not met the substantial preliminary showing for setting a Franks-Mann hearing. The trial court agreed, noting the defense's circular argument regarding the 911 caller: that the caller was not credible at the time he made the 911 call, so that information should not have been relied upon for the affidavit-assuming the caller was indeed the citizen informant-but that the caller was very credible when he confessed to defense counsel that the information he had provided during the call was a lie. The court further observed that shortly after the 911 caller spoke with Sabo's defense counsel, he was arrested for murder and kidnapping in Texas. Therefore, the court found the information from the 911 caller to be less credible than that contained in Officer Ayala's affidavit, and rejected Sabo's renewed motion.
¶13 Sabo then pled guilty to the charges in September 2016. He received a sixteen-year sentence, bifurcated as eight years of initial confinement and eight years of extended supervision. This appeal follows.
DISCUSSION
¶14 Sabo's arguments on appeal-that the affidavit in support of the search warrant lacked the requisite probable cause, that he is entitled to a Franks-Mann hearing because the affidavit contained false information, and that the identity of Officer Ayala's citizen informant should be disclosed-are intertwined in that they all involve the credibility of Officer Ayala's informant, which Sabo contends was not proven. Based on this assertion and the related claims, Sabo seeks to have the evidence seized from his residence during the execution of the search warrant suppressed. In our review of a motion to suppress, we apply a two-step standard of review: (1) we first review the trial court's findings of fact, and will uphold them unless they are clearly erroneous; and (2) we then "review the application of constitutional principles to those facts de novo. " See State v. Eason , 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625.
¶15 We first discuss the sufficiency of the search warrant. A search warrant will "pass constitutional muster" as long as it complies with three requirements:
(1) prior authorization by a neutral, detached magistrate; (2) a demonstration upon oath or affirmation that there is probable cause to believe that evidence sought will aid in a particular conviction for a particular offense; and (3) a particularized description of the place to be searched and items to be seized.
State v. Tate , 2014 WI 89, ¶28, 357 Wis. 2d 172, 849 N.W.2d 798 (citation omitted). Sabo argues that the second requirement was not met because the affidavit submitted by Officer Ayala to establish probable cause was based in part on information from the informant, which Sabo asserts was not shown to be credible and reliable.
¶16 "Probable cause to issue a warrant exists if the information set forth in support of the warrant establishes a 'fair probability that a search of the specified premises would uncover evidence of wrongdoing.' " State v. Hillary , 2017 WI App 67, ¶8, 378 Wis. 2d 267, 903 N.W.2d 311 (citation omitted). In our review, we "examine[ ] the totality of the circumstances presented to the warrant-issuing commissioner to determine whether the warrant-issuing commissioner had a substantial basis for concluding that there was a fair probability that a search of the specified premises would uncover evidence of wrongdoing." State v. Romero , 2009 WI 32, ¶3, 317 Wis. 2d 12, 765 N.W.2d 756. "This court 'accord[s] great deference to the warrant-issuing judge's determination of probable cause, and that determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause.' " Id. , ¶18 (citation omitted).
¶17 In this case, the affidavit in support of the warrant included hearsay information from the informant. Generally, under these circumstances this court will "evaluate the veracity of the hearsay declarant as well as the basis of the declarant's knowledge." Hillary , 378 Wis. 2d 267, ¶9 (citations and internal quotation marks omitted). With regard to citizen informants, however, the courts have recognized the important role they play in the investigation of criminal activity. State v. Williams , 2001 WI 21, ¶36, 241 Wis. 2d 631, 623 N.W.2d 106. Thus, we apply "a relaxed test of reliability, that shifts from a question of personal reliability to observational reliability." Id. (citation and internal quotation marks omitted). This test includes the evaluation of " 'the nature of [the informant's] report, [the informant's] opportunity to hear and see the matters reported, and the extent to which it can be verified by independent police investigation.' " State v. Kolk , 2006 WI App 261, ¶13, 298 Wis. 2d 99, 726 N.W.2d 337 (citation omitted). "[W]e view citizens who purport to have witnessed a crime as reliable, and allow the police to act accordingly, even though other indicia of reliability have not yet been established." Williams , 241 Wis. 2d 631, ¶36.
¶18 Here, the trial court concluded that the informant met this test of reliability. The court found that the details provided by the informant relating to the description of the handgun Sabo possessed, as well as regarding the processing and packaging of cocaine, were sufficiently specific to support a determination of credibility. Furthermore, the court recognized that this information had been independently verified by Officer Ayala in his subsequent identification of Sabo and his previous criminal record, and the officer's observation of Sabo at the address provided by the informant. These findings are supported by the record and were properly evaluated using the relevant law relating to the reliability of a citizen informant. See id. ; Kolk , 298 Wis. 2d 99, ¶13.
¶19 This finding of credibility by the trial court correlates with the court's rejection of Sabo's request for a Franks-Mann hearing. A Franks-Mann hearing must be held if " 'the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]' " State v. Mann , 123 Wis. 2d 375, 384, 367 N.W.2d 209 (1985) (quoting Franks v. Delaware , 438 U.S. 154, 155-56 (1978) ). A "substantial preliminary showing" must state the " 'allegations of deliberate falsehood or of reckless disregard for the truth,' " and should " 'point out specifically the portion of the warrant affidavit that is claimed to be false[.]' " State v. Anderson , 138 Wis. 2d 451, 462, 406 N.W.2d 398 (1987) (citation omitted). There should also be a statement of supporting reasons for the allegations. Id.
¶20 In attempting to establish a substantial preliminary showing, Sabo pointed to several errors in the affidavit. First, Sabo stated that he has never been known by the nickname "Drew," the name provided by the informant, as described in the affidavit. Additionally, Sabo pointed out that the informant had erroneously described Sabo's pistol as black, when it was actually black and silver. Sabo also challenged the fact that the informant had apparently not included information about the exterior surveillance cameras located at the residence, and claimed that he could prove that no informant had been in his house by obtaining statements from the individuals shown on the surveillance cameras during the week prior to the execution of the search warrant.
¶21 In rejecting Sabo's request for a Franks-Mann hearing, the trial court inferred that these alleged errors did not rise to the level of being " 'a deliberate falsehood' " or " 'reckless disregard for the truth.' " See Anderson , 138 Wis. 2d at 462 (citation omitted). Rather, the trial court recognized that some details in the affidavit may have been purposefully vague in order to avoid the possibility of identification of the informant. Additionally, for Sabo's renewed motion, the trial court reviewed the information relating to the 911 caller and determined that it was not sufficient to warrant a Franks-Mann hearing. The court found that the caller was not a credible source to demonstrate that there were deliberate false statements included in the affidavit. These findings are reasonable based on the facts in the record, and the relevant law relating to the granting of a Franks-Mann hearing was thus properly applied. See Anderson , 138 Wis. 2d at 462.
¶22 These credibility determinations had a direct import on the trial court's decision not to compel disclosure of the identification of the informant. A court can order that the identity of an informant be disclosed if it is "not satisfied that the information was received from an informer reasonably believed to be reliable or credible[.]" WIS. STAT. § 905.10(3)(c). This determination is left to the discretion of the trial court. State v. Fischer , 147 Wis. 2d 694, 703, 433 N.W.2d 647 (Ct. App. 1988). We will uphold a discretionary decision of the trial court if it " 'has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.' " Hefty v. Strickhouser , 2008 WI 96, ¶28, 312 Wis. 2d 530, 752 N.W.2d 820 (citation omitted).
¶23 The trial court based its denial of Sabo's motion to compel disclosure of the informant's identity on its other findings regarding the credibility of the informant and the sufficiency of the affidavit, which we have concluded were reasonable. We therefore uphold this discretionary decision as well.
¶24 In sum, Sabo has failed to demonstrate that the trial court's findings of fact relating to the credibility of the informant were clearly erroneous. We conclude that they were not, and further, that the trial court properly applied the appropriate standards of law to Sabo's motions. We therefore affirm.
By the Court. -Judgment affirmed.
Not recommended for publication in the official reports.

See Franks v. Delaware , 438 U.S. 154 (1978) ; State v. Mann , 123 Wis. 2d 375, 367 N.W.2d 209 (1985).

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.