COURT OF APPEALS
DECISION
DATED AND FILED

April 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP219-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2016CF1377**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

TROY P. HOOPLE,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Eau Claire County: SARAH MAE HARLESS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Troy Hoople appeals from a judgment convicting him of three counts of possession of child pornography. Hoople claims that the

circuit court erred by denying his motion to suppress evidence seized pursuant to a search warrant that Hoople contends failed to establish probable cause. We conclude the warrant was valid and therefore affirm the judgment of conviction.

## BACKGROUND

¶2 The search warrant at issue was based on the affidavit of Bridget Coit, a detective with the City of Eau Claire Police Department. Coit stated she had obtained a police report filed by Eau Claire Police Department patrol officer, Tim Porn, relaying information provided by a Canadian man, Peter Innsbrook.[1] Innsbrook contacted law enforcement to report he had observed "inappropriate" activity during a streaming video on the mobile phone application "Live.me." The video was approximately forty-eight minutes long and portrayed a female whom Innsbrook estimated to be twelve years old and believed to be from New Zealand or Australia based on her accent. During the video, a male with the screen name "Troy Hoople" texted the girl, asking her to expose herself and to be his girlfriend. The girl then "could be seen changing" from a bikini into undergarments.

¶3 Innsbrook told Porn that he contacted the man using the "Troy Hoople" screen name through the online application and told him that what he was doing was wrong. Hoople responded that he was not doing anything wrong, but shortly thereafter Innsbrook observed that Hoople deleted a recording of the video from his account. Innsbrook then looked up "Troy Hoople" on Facebook and located a man from Eau Claire, Wisconsin, whose profile

---

[1] We use a pseudonym to protect the informant's identity.

photograph matched the man whom Innsbrook had seen in the Live.me video. Porn was able to verify that a person named Troy Hoople lived in Eau Claire.

¶4 Coit subsequently contacted Innsbrook. Innsbrook told Coit that he regularly reported "concerning internet activity and/or behavior" to the National Center for Missing and Exploited Children, or to individual law enforcement agencies if he was able to narrow down a location where the person engaged in such behavior was living. Coit then contacted the National Center for Missing and Exploited Children, which verified that its staff had previously received reports of "concerns" from Innsbrook.

¶5 Coit next contacted Eau Claire Police detective Chad Stedl, who was assigned to the Chippewa Valley Computer Forensic Laboratory. With Stedl's assistance, Coit was able to verify that there was a user named "Troy Hoople" with a Live.me account. A large number of the people Hoople was following on Live.me were females who appeared to be between twelve and fifteen years old. All three of the top "fans" following Hoople's account appeared to be juvenile females. On a video posted to the account of one of Hoople's top three "fans," a girl with what appeared to be an Australian or New Zealand accent identified herself as being fourteen years old—although she had a different screen name than the girl in the video Innsbrook had reported. Coit further verified that users on Live.me were able to either live stream content or post recorded videos and they could correspond with one another via a chat function, as Innsbrook had described doing. Coit also observed that pictures on the Live.me account of Troy Hoople matched pictures of the Facebook account of Troy Hoople from Eau Claire. Coit then took further measures to verify Troy Hoople's address in Eau Claire, and his driver's license photograph.

¶6 Coit alleged, based on her training and experience, that: (1) individuals who have a sexual interest in children often seek out, possess and/or collect child pornography, and may also seek out children in online chat rooms, befriend them, expose them to sexual content, and attempt to meet them in person to satisfy the perpetrator's sexual appetites; (2) individuals who are interested in or engaged in child abuse and exploitation are unlikely to voluntarily dispose of images in their possession; and (3) images of child abuse and exploitation are primarily produced, distilled, and possessed through the use of computers and the internet.

¶7 Based upon the above information and a recitation of Coit's experience investigating sexual offenses, pornography cases, and other crimes against children, Coit applied for a warrant to search Hoople's residence to obtain "evidence of child pornography that Troy Hoople was observed watching via the Live.me app." The circuit court issued a warrant authorizing law enforcement to search Hoople's trailer and vehicles located on his property for a number of items, including computers or other electronic devices containing "visual depictions representing the possible exploitation of children," and documents showing ownership of the property searched and online accounts. Upon executing the warrant, law enforcement seized an electronic tablet containing "over three thousand images of child erotica, including many images of child pornography."

¶8 The State charged Hoople with three counts of possession of child pornography. Hoople filed a suppression motion alleging that his home had been searched without probable cause. The circuit court denied the suppression motion following a hearing. The court then held a bench trial and convicted Hoople of all three counts. Hoople now appeals, challenging the suppression ruling.

**DISCUSSION**

¶9      When reviewing a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2019-20);[2] ***State v. Hindsley***, 2000 WI App 130, ¶22, 237 Wis. 2d 358, 614 N.W.2d 48. We will, however, independently determine whether the facts found by the court satisfy applicable constitutional provisions. ***Hindsley***, 237 Wis. 358, ¶22.

¶10     A search warrant may be issued only upon a showing of probable cause. ***State v. Romero***, 2009 WI 32, ¶16, 317 Wis. 2d 12, 765 N.W.2d 756. The judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit … there is a fair probability that contraband or evidence of a crime will be found in a particular place." ***Id.***, ¶19. Due to the strong preference for searches conducted pursuant to a warrant, a reviewing court will defer to a judge's issuance of a warrant "unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." ***State v. Silverstein***, 2017 WI App 64, ¶13, 378 Wis. 2d 42, 902 N.W.2d 550.

¶11     The totality of the circumstances test takes into account "both the content of information possessed by police and its degree of reliability." ***State v. Sisk***, 2001 WI App 182, ¶7, 247 Wis. 2d 443, 634 N.W.2d 877. The required degree of reliability for a tip is inversely proportional to the amount of other information known by law enforcement. ***Id***. Law enforcement may reasonably deem information provided by a citizen informant who purports to have witnessed

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

a crime to be reliable when the citizen has provided self-identifying information, or law enforcement agencies are able to corroborate some of the information provided. *Id.*, ¶¶7-11 (self-identification of informant); *State v. Powers*, 2004 WI App 143, ¶14, 275 Wis. 2d 456, 685 N.W.2d 869 (corroboration).

¶12    Hoople first contends that the search warrant affidavit was based upon unreliable information because law enforcement did not adequately verify the information provided by Innsbrook. Specifically, Hoople points out that law enforcement did not themselves view either the live stream video Innsbrook claimed to have observed or any of the materials about which Innsbrook had reported concerns to the Center for Missing and Exploited Children. But law enforcement did not need to verify details of the actual criminal activity Innsbrook claimed to have witnessed or the accuracy of Innsbrook's past reports to other entities because he was a citizen informant.

¶13    When law enforcement agencies have received information from a citizen informant, they "should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case." *Silverstein*, 378 Wis. 2d 42, ¶14. The details of a citizen informant's tip that are corroborated may be innocent in and of themselves if they relate to the informant's opportunity to observe the reported conduct. *State v. Kolk*, 2006 WI App 261, ¶¶13-16, 298 Wis. 2d 99, 726 N.W.2d 337.

¶14    Here, law enforcement corroborated facts relating to the observational reliability of Innsbrook's tip by verifying that Hoople did, in fact, have a Live.me account and that the application worked in the manner described by Innsbrook. Coit's investigation further bolstered the reliability of Innsbrook's report by discovering evidence of Hoople's apparent interest in underage girls

among his followers and those he followed on Live.me. In short, there were sufficient corroborated details and other indicia of reliability of Innsbrook's report to reasonably rely on it in the absence of any circumstances suggesting otherwise.

¶15    Hoople next argues that the search warrant affidavit fails to allege facts constituting the commission of a crime, because it is not "clear" that the girl on the Live.me video "ever exposed herself" or that Innsbrook witnessed anything illegal. Hoople points out that the affidavit attributed the statement that the girl "could be seen changing" to Hoople, rather than to Innsbrook.

¶16    We note it is apparent that the affidavit's attribution to Hoople of the statement about the girl changing clothes was in error because law enforcement executed the warrant simultaneously with a traffic stop during which they arrested Hoople before ever interviewing him. The probable cause portion of the complaint corrected this error, and it attributed the statement to Innsbrook. In any event, taking the affidavit's attribution of the statement to Hoople at face value would in no way undermine the probable cause determination. An admission by the defendant that the girl could be seen changing clothes on the video would be even more incriminating than the same allegation by Innsbrook in terms of establishing Hoople's possession of child pornography.

¶17    Aside from the statement that the girl could be seen changing clothes on the video, the remaining allegations by Innsbrook in the probable cause affidavit—namely, that Hoople solicited a juvenile girl to expose herself during a live stream video; recorded the video; and then indicated consciousness of guilt by removing the video from his online account when confronted by Innsbrook through a chat function—were themselves sufficient to show probable cause to believe that Hoople had attempted the sexual exploitation of a child. *See* Wis.

STAT. § 948.05. In conjunction with the additional information that Hoople followed, and was followed by, other juvenile girls on Live.me, there was more than a fair probability that evidence of some criminal activity involving either child pornography or sexual exploitation of a child would be found on Hoople's computer.

¶18 Finally, Hoople contends that the search warrant affidavit was largely based upon conjecture and speculation as to common habits and the use of computers and digital technology by people who are interested in or engage in child abuse or exploitation. However, a law enforcement officer's "knowledge, training, and experience are germane to the court's assessment of probable cause." *State v. Carroll*, 2010 WI 8, ¶28, 322 Wis. 2d 299, 778 N.W.2d 1. We are satisfied that Coit's generalizations based upon her stated training and experience about the common habits of people engaged in child exploitation were appropriate considerations for the circuit court to use in its evaluation of the totality of the circumstances.

¶19 We conclude that the search warrant affidavit provided probable cause to search Hoople's home for visual depictions representing the possible exploitation of children. It follows that the circuit court properly denied Hoople's suppression motion. We therefore affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.